Stephanie Ann BROWN, Plaintiff,

v.

The COUNTY OF GENESEE,
Defendant,

and

Michigan Council 25, AFSCME AFL–
CIO Local 2259, Intervening
Defendant.

No. 84–CV–8157–FL.

United States District Court,
E.D. Michigan,
Southern Division—Flint.

Dec. 8, 1987.

Gregory T. Gibbs, Flint, Mich., for plaintiff.

Raymond J. Branch, Flint, Mich., for defendant.

Thomas A. Ricca, Detroit, Mich., for intervening defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

There is one remaining motion pending in this matter. The issue is whether plaintiff is entitled to have ¶ 2b of her settlement agreement modified, because the agreement was entered into while under the mistaken impression that the highest rate of pay to which plaintiff would have been entitled upon her reinstatement was the "C" level, when in reality the highest rate was the "D" level. The parties have stipulated to an extensive set of facts. (See Exh. A to Docket Entry # 52). Briefly, the relevant facts follow.

Both plaintiff and defendant agreed to an interim settlement of this case in July, 1985, pursuant to which plaintiff agreed basically to release defendant from liability for receipt of her back pay and other relief.[1] In order to arrive at complete relief, the union intervened to work out a judgment on liability and retroactive seniority.

---

1. The issue of retroactive seniority was decided    separately.

Prior to effectuating this judgment, a dispute arose as to plaintiff's placement at the appropriate pay step level[2] if her employment commenced on June 16, 1982, the date she was told that she would not be hired because of her diabetes (Stipulated Facts 2). Plaintiff has emphasized that during settlement negotiations, she conveyed to defendant's counsel that her objective was to be paid at a rate at which she would have been paid if she had been hired on June 16, 1982, and that she would not settle otherwise (Stipulated Facts 12, 16). She rejected one proposed settlement stipulation because it only offered pay at the "B" level (Stipulated Facts 14, 15). At this point, defendant requested that plaintiff draft a stipulation setting forth the precise provisions she sought to have included in the settlement; plaintiff thereafter substituted the "C" level for the "B" level in the previous stipulation (Stipulated Facts 17). When defendant's counsel checked with the Personnel Director after receiving the proposed agreement, he learned that the highest rate of pay that plaintiff could be earning was at the "D" step. Defendant's counsel candidly admits that "he believed it probable that Plaintiff and her counsel were under the mistaken impression that the 'C' step was the highest pay step Plaintiff could have been at had she been hired on July 16, 1982." Defendant nevertheless did not inquire of plaintiff and her counsel what they believed in this regard (Stipulated Facts 21, 22). The settlement was thus executed with the "C" step as the measure of compensation. Plaintiff subsequently became aware that the "C" step was not the highest and attempted to modify the settlement, which defendant would not do (Stipulated Facts 23, 24).

Plaintiff claims that the settlement should be modified because: 1) defendant had a duty to inform plaintiff that the "D" rate was the highest rate she could have earned had she started work on June 16, 1982; and 2) defendant's failure to correct plaintiff's misimpression constitutes a silent fraud or an innocent misrepresentation. Defendant argues that plaintiff requested only that she receive a rate of pay that she would have received had she started working on June 16, 1982, and not that she receive the *highest* rate of pay that would be possible to earn. Further, defendant submits that it never misrepresented a fact to plaintiff since plaintiff never asked defendant to represent the *highest* rate of pay for which she would be eligible.[3]

In order to sustain a cause of action for innocent misrepresentation, a plaintiff must prove:

1. A material representation by defendant;
2. Falsity of the representation;
3. The representation is made "in connection with making a contract";
4. Reliance by the plaintiff;
5. Resulting injury to the plaintiff; and
6. The injury must inure to the benefit of the defendant.

*Eaton Corp. v. Magnavox,* 581 F.Supp. 1514, 1535 (E.D.Mich.1984); *see also, U.S. Fidelity & Guaranty v. Black,* 412 Mich. 99, 313 N.W.2d 77 (1980). As noted, the representation must be false at the time that it was made. *Id.* at 117, 313 N.W.2d 77. On the other hand, silent fraud requires a legal or equitable duty of disclosure and usually results from the failure to disclose that a representation, on which a party relied to enter into a contract, became false prior to the consummation of the transaction. *Id.* at 127, 313 N.W.2d 77.

Did defendant owe plaintiff a duty to disclose the highest pay rate when that fact became known to it? In support of plaintiff's position that such a duty existed, she cites a personal injury case in which plaintiff's attorney failed to disclose to defendant that the plaintiff died prior to the

---

**2.** Under the terms of a collective bargaining agreement between the County and the Union, effective July 19, 1982, there were seven levels of pay established for the employment classification of security guard, with A being the lowest.

**3.** Further, defendant argues plaintiff was responsible for preparing the proposed stipulation, which included this term.

conclusion of their settlement negotiations. *Virzi v. Grand Trunk Warehouse and Cold Storage Co.,* 571 F.Supp. 507 (E.D. Mich.1983). In *Virzi,* Judge Gilmore emphasized that an attorney has an absolute duty of candor and frankness to opposing counsel to volunteer information critical to settlement, even though defendant did not ask whether plaintiff was still alive.

It must be noted that the settlement being challenged here was one under the auspices of the Court incidental to a lawsuit as in *Virzi* and thus involves not only defendant's relationship with plaintiff and her counsel, but also one with the Court.

Based on the factual stipulation upon which this dispute is to be resolved, both counsel were aware that the settlement plaintiff intended to enter into contemplated the principle that plaintiff was to be placed at the highest rate of pay that she could have received had she been hired on June 16, 1982. At the time of their execution of the settlement agreement, plaintiff and her counsel believed it to be the "C" step. Defendant's counsel knew that this was the belief of both plaintiff and her counsel when plaintiff's counsel inserted the "C" step in the proposed settlement stipulation. Before accepting this stipulation, defendant's counsel found out that the highest rate would in fact have been the "D" step. Nevertheless defendant's counsel withheld this information from plaintiff and her counsel and executed the settlement agreement and now seeks to hold plaintiff to it claiming that (1) he had no obligation to reveal the factual error to plaintiff and/or her counsel, and (2) the settlement agreement as written should be enforced because there was only a unilateral mistake (i.e., a mistake on the part of the plaintiff) which does not justify reformation, rescission, or any relief. Defendant's counsel argues that that it was not a mistake on his part since he knew of the factual error and executed the agreement intentionally.

■ This is indeed a strange argument. Basic law (not to speak of ethics as did Judge Gilmore in *Virzi*) would hold that in a case of a mutual mistake of fact, the error should be corrected and appropriate relief afforded to give effect to the real intention of the parties. Culpability of the parties is equal because of the mutuality of the mistake and the normal equitable considerations inherent in weighing the conduct of the parties are viewed as irrelevant as subsumed in the mutuality of the mistake.

If a remedy is affordable in a case of mutual mistake, how much more force is there to a claim for relief when one party makes a mistake of fact and the other party knows of that mistake and seeks to take advantage of it? If not actual fraud, that conduct smacks of fraud.

There is in the field of contract law a clear distinction between cases involving mutual mistake of fact and unilateral mistake of fact. But the distinction is one which makes sense and not one that is mechanical. In a mutual mistake-of-fact case, there is no reason not to give effect to what both parties intended and thus relief is granted. Clearly this is giving effect to the meeting of the minds which in fact took place. In the unilateral mistake-of-fact case, relief is not afforded because the underlying hypothesis is that one side was mistaken and the other side was *not:* that is, one side knew the true fact and did not know that the other party was operating under a mistake in that fact. In the true case of unilateral mistake, neither party is knowingly taking advantange of another's error, and the conduct of both parties are of the same culpability or lack of culpability. In other words, the concept of mistake of fact, mutual or unilateral, is a concept that is applicable to situations where no one is knowingly seeking to take advantage of another's known mistake.

What defendant's counsel seeks to do is not only not authorized by law, but is unethical. What is presented here is a case where relief is more appropriate than in the mutual mistake-of-fact case even though it is a unilateral mistake of fact.

Frankly, I am shocked that defendant's counsel says he has no duty to advise plaintiff through her counsel that they are operating under a mistake of fact. Under the defendant's theory, if when paying for a

meal in a restaurant, one by mistake is given back $10 more than entitled to receive, one is entitled to keep the $10 because of the unilateral mistake. The converse shows the ridiculousness of the argument: while paying your check the cashier knows that a $10 addition mistake against the patron was made and accepts the money in payment on the basis that the mistake is unilateral.

Defendant's counsel's argument based upon fraud is not pertinent. According to the statement of facts, defendant's counsel knew that *it was probable* that plaintiff was under the impression that "C" was the appropriate rate when counsel for the defendant knew it was in fact "D". Probabilities mean more than a 50% chance. It meets the trial's preponderance of the evidence test. The law will not countenance such conduct. It is interesting to wonder whether counsel for the defendant notified his client, the County Board, that plaintiff was in all probability operating under a mistaken impression and that it was a good time to take advantage of the plaintiff in executing the settlement.

Pursuant to the stipulated procedures and consistent with this Opinion, plaintiff shall submit a Proposed Order[4] found at Exhibit C to Docket Entry #50 within fifteen days (15) of the date hereof.

IT IS SO ORDERED.

---

**4.** The Court need not deal with the appropriate relief (rescission of the settlement, reformation, etc.) as the parties stipulated the relief in the event plaintiff received a favorable ruling.