**Stephanie Ann BROWN, Plaintiff-Appellee,**

v.

**The COUNTY OF GENESEE, Defendant-Appellant,**

**Michigan Council 25, AFSCME AFL-CIO, Local 2259, Defendant.**

No. 88-1045.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1988.

Decided April 11, 1989.

**170**

Gregory T. Gibbs, Flint, Mich., for plaintiff-appellee.

Richard M. Barron, Flint, Mich., for defendant-appellant.

Thomas A. Ricca, Detroit, Mich., for defendant.

Before KENNEDY, KRUPANSKY and BOGGS, Circuit Judges.

PER CURIAM.

The County of Genesee (County), defendant below and appellant before this court, has appealed from the decision of the United States District Court for the Eastern District of Michigan which modified a consent agreement that had been negotiated with and agreed to by Stephanie Ann Brown (Brown), the plaintiff below and appellee herein, in this action alleging employment discrimination resulting from Brown's physical impediment, 694 F.Supp. 250.

The case was submitted to the trial court for disposition upon stipulated facts. Brown is a diabetic who requires daily injections of insulin. The parties have agreed that her condition constituted a physical handicap which was protected, both under Michigan and federal statutes.

Brown had applied for a position with the County as a security guard in a county jail facility in March, 1982. Brown was initially informed on May 3, 1982 that she had qualified for the position and that she could commence employment in June, 1982, subject to successfully completing a physical examination. When Brown advised the examining physician of her diabetic condition, and the need for daily insulin injections, he advised the County that she was not physically qualified to serve in the position of a security guard. On June 16, 1982, the County informed Brown that she would not be employed because of her diabetic condition.

Brown, believing that the County had discriminated against her because of her physical disability, thereupon obtained legal counsel to protect her rights and to pursue her cause. The County denied having a policy of excluding all diabetics from consideration for county employment, asserting that the physician who had examined Brown had recommended that she was not physically qualified to be employed as a prison security guard. The appellee's attorney thereupon entered into negotiations with the County in an effort to resolve the controversy. After the initial negotiations proved unsuccessful, Brown filed an action in the United States District Court for the Southern District of Michigan on March 21, 1984, wherein she alleged that the County had refused to employ her because of her physical disability in violation of the federal Rehabilitation Act, 29 U.S.C.A. § 794 (West Supp.1988), the federal Civil Rights Act, 42 U.S.C.A. § 1983 (West 1981), and the Michigan Handicappers' Civil Rights Act, Mich. Comp. Laws Ann. § 37.1101 and Mich. Stat. Ann. § 3.550(101).

In late March, 1984, after Brown had filed the instant action, the County offered to appoint her to a recently vacated position of county jail security guard, the position which was initially denied her in June of 1982 for physical reasons. Brown accepted this offer on March 31, 1984, after successfully completing her physical examination which considered her previously disqualifying physical condition of diabetes. Brown has continued her employment in this position since that time and the present action is concerned only with the period of time between the denial of her first application date on June 16, 1982 and her subsequent employment on March 31, 1984.

On October 5, 1984, the County filed a motion for summary judgment on Brown's claim under the federal Rehabilitation Act

(Act) and argued that the district court was without jurisdiction to entertain appellant's cause of action under the Act because the County Sheriff's Department was not subsidized by any federal grants or funds, which was a prerequisite to invoking federal jurisdiction pursuant to the Act. Alternatively, the County urged that in the event the district court were to conclude that the Act conferred jurisdiction to entertain the instant action, it should nevertheless dismiss Brown's claim under § 1983 as preempted by the Rehabilitation Act. Finally, the County requested the district court to dismiss Brown's pendant state law claims under the Michigan Handicappers' Rights Act.

On April 24, 1985, the district court denied the County's motion for summary judgment as to the causes of action asserted pursuant to the Act and the Michigan Handicappers' statute. The district court, however, granted summary judgment in favor of the County on Brown's § 1983 claim, concluding that Congress had intended the remedies afforded under the Act to be exclusive in resolving all causes of action charging discrimination arising as a result of physical handicaps, thus barring any relief under § 1983. *Brown v. County of Genesee*, 37 F.E.P. Cases 1595 (E.D.Mich. 1985). Contemporaneously, the parties had agreed that in the event the district court failed to grant summary judgment on all of Brown's claims, any remaining controversies would be referred to mediation. Consequently, the district court entered an order on April 21, 1985 referring the remaining counts for mediation on May 14, 1985.

As a result of the ongoing settlement negotiations, the parties concluded a Stipulation and Settlement Agreement on July 9, 1985, in which they agreed that Brown would be advanced to the third pay level ("C" step), as explained in greater detail below. Approximately one year subsequent to the entry and execution of the settlement agreement, the appellee learned from a co-worker that another employee, who had been hired in 1982 at the time Brown's application for employment had been rejected, was being paid at the fourth pay level ("D" step). Brown's counsel

thereupon protested to the County that Brown had not been advanced to the highest possible pay level which she theoretically could have achieved had she been hired in 1982.

After counsel for the parties were unable to resolve the dispute, the appellee moved to vacate the judgment entry which incorporated the settlement agreement of July 9, 1985 and to modify the agreement to advance Brown to step "D" on the compensation scale, pursuant to Federal Rule of Civil Procedure 60(b). The parties submitted the controversy for disposition upon the following stipulation of facts.

1. Plaintiff was hired by Defendant County on March 31, 1984, as a jail security guard.

2. Under the terms of a collective bargaining agreement negotiated between Defendant County and Intervening Defendant AFSME LOCAL 2259, and effective July 19, 1982, seven (7) pay levels or pay steps were established for the employment classification of Security Guard.

3. The first pay step for Security Guard under terms of said contract was the "New Hire" pay step.

4. The "New Hire" pay step has continued to be the first of seven (7) pay steps for Security Guard under each subsequent collective bargaining agreement between Defendant County and Intervening Defendant AFSCME LOCAL 2259.

5. Prior to the contract of July 19, 1982, the first pay step for Security Guard was the "A" pay step.

6. If Plaintiff had been hired on June 16, 1982, as a Security Guard, she would have been paid at the "A" pay step.

7. However, Plaintiff was hired as a Security Guard on March 31, 1984, at the "New Hire" rate of pay under the terms of the then existing collective bargaining agreement.

8. Pay step increases under the Genesee County pay system are not automatic, but are based on "merit" following an annual evaluation of an employee's work per-

formance by the employee's department head.

9. Effective March 31, 1985, Plaintiff received a merit step increase and Plaintiff's rate of pay was increased to the "A" step for Security Guard.

10. Counsel for Plaintiff and Defendant engaged in negotiations to settle Plaintiff's lawsuit during the period of April 8, 1985 through July 9, 1985.

11. Said settlement negotiations encompassed Plaintiff's rate of pay.

12. At various times during the negotiations, counsel for Plaintiff stated that Plaintiff's objective in settlement was to receive, in terms of benefits and compensation, that which she would have received had she been hired by Defendant County on June 16, 1982.

13. Counsel for Defendant, on the other hand, inquired of Plaintiff's counsel as to the specific terms on which Plaintiff would agree to settle.

14. On May 15, 1985, after telephonic negotiation between counsel, counsel for Defendant mailed a proposed STIPULATION to counsel for Plaintiff setting forth the specific terms of a proposed settlement of Plaintiff's lawsuit.

15. In said STIPULATION, Defendant included a provision that Plaintiff would be paid at the "B" step for security guard—a rate of pay one step above that which Plaintiff was then receiving from Defendant County.

16. Sometime after receiving said STIPULATION counsel for Plaintiff phoned counsel for Defendant to advise that Plaintiff would not settle unless Plaintiff were paid at a rate of pay she would have received had she been hired on June 16, 1982.

17. Following further negotiations, Counsel for Defendant requested that counsel for Plaintiff have his client put her settlement demands in writing, signed by her, and forward them to counsel for Defendant. Counsel for Plaintiff then took the original proposed STIPULATION prepared by counsel for Defendant, retyped the proposed STIPULATION on his business stationary, substituted the letter "C"

for "B" in paragraph 2.b of the retyped proposed STIPULATION, and added a paragraph on page 5 of the retyped proposed STIPULATION which stated, in part, that Plaintiff had read the proposed Agreement and STIPULATION and submits it as an offer to settle this litigation.

18. On June 20, 1985, Plaintiff reviewed with attorney the retyped proposed STIPULATION, Plaintiff signed the retyped proposed STIPULATION and it was delivered to Defense counsel. The pay step in the retyped proposed STIPULATION read "C" step because both Plaintiff and her counsel believed the "C" step to be the highest step she could have received had she been hired on June 16, 1982.

19. Upon receipt of the retyped proposed STIPULATION, counsel for Defendant then asked Assistant County Personnel Director, James K. Rundell, to determine whether Plaintiff could have been at the "C" step had she been hired on June 16, 1982.

20. Prior to approval of the settlement agreement by the Genesee County Board of Commissioners, Mr. Rundell advised Counsel for Defendant that the highest step Plaintiff could have been at had she been hired on June 16, 1982, was the "D" Step.

21. Counsel for Defendant did not know, but he believed it probable that Plaintiff and her counsel were under the mistaken impression that the "C" step was the highest pay step Plaintiff could have been at had she been hired on June 16, 1982.

22. Counsel for Defendant did not, however, inquire of Plaintiff's counsel as to what he or his client believed was the highest pay step Plaintiff could have been at had she been hired on June 16, 1982.

23. In May of 1986, Plaintiff phoned her attorney and advised him that a co-worker in her classification hired after June 16, 1982 was receiving pay at a level one step higher than she had received after entry into the settlement agreement.

24. On May 6 and May 7, 1986, counsel for Plaintiff notified Defense Counsel that

Plaintiff had not been increased to the highest pay level she could have been at had she been hired on June 16, 1982 since someone hired after June 16, 1982 was being paid at a higher step than Plaintiff. Plaintiff's counsel requested that Plaintiff's pay level be increased to the highest step she could have progressed to had she been hired June 16, 1982. Defense counsel declined to make the adjustment requested, and advised Plaintiff's counsel as follows:

A. Defense counsel was aware at the time of the settlement that the "C" step in the STIPULATION was not the highest step Plaintiff could have been at had she been hired on June 16, 1982.

B. Defense counsel did not know, but he believed it probable that Plaintiff and her counsel mistakenly assumed that the "C" step was the highest step Plaintiff could have obtained had she been hired on June 16, 1982.

C. Defense counsel felt no obligation at the time of settlement to advise Plaintiff's counsel or Plaintiff that the "D" step was the highest step Plaintiff could have obtained had she been hired on June 16, 1982.

D. Defense Counsel and the Defendant took the position that any mistake of Plaintiff and her counsel was a unilateral mistake which would not justify modifying the STIPULATION.

*Stipulation of Facts dated August 12, 1987.* Based upon the foregoing stipulated facts, the district court concluded that the settlement agreement should be vacated and reformed. The district court decided that the appellant knew that it had been the appellee's intention to seek compensation authorized by the highest available pay scale which she would have attained had she been hired in 1982; that the County had been aware of Brown's misunderstanding of the "C" pay scale and/or mistaken belief that it was the highest pay level to which appellant could have advanced had she been employed in 1982; that both Brown and the County had intended that Brown was to be compensated at the highest pay level which she could have attained had she been hired in 1982; and that the appellant's failure to correct the appellee's

misconception as the appropriate pay step, (i.e., level "D" rather than level "C"), provided cause to reform the agreement. The district court therefore vacated its earlier decision of July 9, 1985 enforcing the original settlement agreement, and entered an amended order and judgment modifying the agreement to mandate that Brown be compensated at level "D."

On appeal, the County has charged the district court with an error of law in concluding, based upon the stipulated facts, that the settlement agreement be vacated. It is well established that a "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988); *accord In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 687 F.2d 626, 629 (2nd Cir.1982) ("It is beyond a district judge's discretion to alter the terms of or refuse to enforce a settlement agreement, absent special circumstances, such as a material breach of the agreement, ... or duress....") (citations omitted); *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400, 405 (7th Cir.1974) ("[I]t was an abuse of discretion for the district court to effectively change the settlement from one providing for dismissal of plaintiffs' complaints with prejudice to one providing for the dismissal without prejudice."), *cert. denied sub nom. Forth Corp. v. Allegheny Airlines, Inc.,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975).

The district court, in the case at bar, concluded that since counsel for the appellant knew that appellee's counsel misunderstood the existing pay scales available to Brown and knew that she could have been eligible for a level "D" promotion at the time the July 9, 1985 settlement had been executed, the consent judgment should be vacated. This conclusion, however, is in conflict with the facts as stipulated, which specified with particularity that appellant and its counsel had *not* known of appellee's misunderstanding and/or misinterpretation of the County's pay scales, although believing it to be probable.

The district court also erred in assuming that *both* Brown *and* the County had intended, as part of the settlement agreement, that Brown should be awarded the *highest possible* wage rate that she could theoretically have attained had she been employed in 1982 instead of in 1984. To the contrary, the parties had stipulated that promotion from one wage level to the next was discretionary. Hence, there was no assurance that Brown would have necessarily reached the *highest potential* wage level had she been hired in 1982. Although during the settlement negotiations, Brown and her counsel had alluded to her desire to attain the highest pay rate available to her, the County at no time agreed to such suggestions. Indeed, the fact that the County had offered to compensate Brown only at the "B" level indicated that the County had not agreed to settle this matter at the highest possible pay level.

█ The intent of the parties when entering a settlement agreement is an issue of fact to be decided by the district court. *See, e.g., Jennings v. Metropolitan Gov't of Nashville,* 715 F.2d 1111, 1114 (6th Cir. 1983); *see also Scheuner Corp.,* 841 F.2d at 154; *Mid–South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 390–91 (5th Cir. 1984). The district court, however, was not at liberty to make findings of fact that were in direct conflict with facts stipulated by the parties. *Jennings,* 715 F.2d at 1114 ("Thus, while we recognize that intent is an issue of fact, the record here permits only one inference to be drawn."); *accord Scheuner Corp.,* 841 F.2d at 155; *Kohr,* 504 F.2d at 405 (district court abused its discretion by making factual conclusion not supported by the record); *cf. Bowater N. Am. Corp. v. Murray Mach., Inc.,* 773 F.2d 71 (6th Cir.1985). In the case at bar, the district court's conclusion that both Brown and the County had intended Brown to be compensated at the highest wage rate which she may have theoretically attained had she initially been employed beginning in 1982 was not supported by the stipulated facts.

The stipulated facts clearly indicated that, after its offer was rejected, the "defendant requested that counsel for Plaintiff have his client put her settlement demands in writing, signed by her, and forward them to counsel for Defendant." Pursuant to that specific request, *Brown's counsel prepared a settlement agreement which was executed by Brown, and which was thereupon forwarded to the County for its approval.* These undisputed facts demonstrated the existence of a valid and enforceable settlement agreement.

It is very clear that there was a proper offer and acceptance of the settlement agreement herein. The negotiations over the settlement agreement occurred over a period of several months. All parties were represented by capable counsel and had sufficient time to familiarize themselves with the terms of the agreement. The agreement contained all necessary elements including valuable consideration. . . . Given the length and the beginning of performance, it seems clear that there was an offer, acceptance and a meeting of the minds. There was no basis upon which to void the settlement agreement.

*Bowater No. Am. Corp.,* 773 F.2d at 74.

█ In the instant case, however, the district court erroneously concluded that since a mutual mistake of material fact would suffice to warrant reformation of a settlement agreement, a unilateral mistake also constituted permissible reason to do so. Existing precedent, however, dictates that only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement. "One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a *mutual mistake* under which *both parties acted.*" *Callen v. Pennsylvania R.R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948) (emphasis added); *Asberry v. United States Postal Serv.,* 692 F.2d 1378, 1380 (Fed.Cir.1982) (same).

If a mistake was made in the present case, it was made by the defendant alone. Unlike a mutual mistake, a unilateral mistake is not sufficient to allow the

mistaken party to limit or avoid the effect of an otherwise valid settlement agreement. *Kline v. Florida Airlines, Inc.,* 496 F.2d 919, 920 (5th Cir.1974); *United States v. Bissett–Berman Corp.,* 481 F.2d 764, 768 (9th Cir.1973); *Virginia Impression Prod. Co. v. SCM Corp.,* 448 F.2d 262, 265 (4th Cir.1971)[, *cert. denied,* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1971) ].

*Cheyenne–Arapaho Tribes of Indians of Oklahoma v. United States,* 671 F.2d 1305, 1311, 229 Ct.Cl. 434, (1982); *accord Mid-South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 392 (5th Cir.1984) ("In this case, OKC's alleged ignorance ... is, at most, a unilateral mistake. There is no claim that either Mid–South or American Employers' concealed these other surveys or misrepresented their contents, nor that there was any overreaching."); *Swift Chem. Co. v. Usamex Fertilizers, Inc.,* 490 F.Supp. 1343, 1356 (E.D.La.1980) ("Whatever the truth is, at best only one of the parties could have been mistaken about the issue. A unilateral mistake about a particular fact is insufficient to reform a contract otherwise properly entered into."), *aff'd,* 646 F.2d 1121 (5th Cir.1981); *Albano Cleaners, Inc.,* 455 F.2d 556, 560 (Ct.Cl.1972); *see also Bowater No. Am. Corp.,* 773 F.2d at 75 ("The adequacy of the contract formation [of a settlement agreement] is further supported by the [fact that] ... there was *no mutual mistake, nor was there mistake due to fraud* which only one of the parties would have known about.") (emphasis added). In the case at bar, there was no mutual mistake or fraudulent misrepresentation.

■ Finally, the district court erred in its alternative finding that the consent agreement should be vacated because of fraudulent and unethical conduct by the County. The district court concluded that the appellant had both a legal and ethical duty to have disclosed to the appellee its factual error, which the appellant may have suspected had occurred. However, absent some misrepresentation or fraudulent conduct, the appellant had no duty to advise the appellee of any such factual error, whether unknown or suspected.

An attorney is to be expected to responsibly present his client's case in the light most favorable to the client, and it is not fraudulent for him to do so.... We need only cite the well-settled rule that the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to "fraud upon the court" for purposes of vacating a judgment under Rule 60(b)....

*Kerwit Med. Prods. v. N. & H. Instruments, Inc.,* 616 F.2d 833, 837 (5th Cir. 1980) (citation omitted).

Although the appellee may have negotiated for a higher settlement figure, the plaintiff's subjective and/or objective desires were of no consequence because the mistake or error of plaintiff's legal counsel in evaluating the wage levels available to Brown resulted from failing to examine and/or a misunderstanding of public records which were available to all individuals. *See* Mich. Comp. Laws Ann. §§ 15.-231, 15.233, 15.235, 15.240 (West 1981). *Compare Taylor v. Texgas Corp.,* 831 F.2d 255, 259 & n. 8 (11th Cir.1987) (relief from award of judgment not appropriate under Fed.R.Civ.P. 60(b) if mistake could have been avoided by the exercise of due diligence by complaining party); *In re M/V Peacock (Maudlin v. M/V Peacock ex rel. Edwards ),* 809 F.2d 1403, 1405 (9th Cir. 1987) (same). Similarly, counsel for Brown could have requested this information from the County, but neglected to do so. The failure of Brown's counsel to inform himself of the highest pay rate available to his client cannot be imputed to the County as unethical or fraudulent conduct. *See, e.g., Kerwit Med. Prods.,* 616 F.2d at 837 ("[Plaintiff] opted to settle the case before completing discovery, obviously for reasons it then deemed sufficient. That it may have acted differently on different facts is no basis for grounding a complaint of fraud."). Alternatively, Brown's counsel could have structured the settlement agreement so as to assure the highest possible wage rate to which she would have been entitled. Brown's failure to formulate the settlement agreement in appropriate terms cannot be imputed as fraudulent or unethi-

cal conduct by the County where the fault, if any, was not attributable to it.

Accordingly, the order of the district court modifying the consent agreement is VACATED and REMANDED, with instructions to enforce the original settlement agreement.