**Michael ROSEN, et al., Plaintiffs,**

v.

**TENNESSEE COMMISSIONER OF FINANCE AND ADMINISTRA-TION, Defendant.**

No. 3:98–0627.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 13, 2001.

George Gordon Bonnyman, Jr., Tennessee Justice Center, Inc., Nashville, TN, for Plaintiffs.

Jennifer Helton Hann, Office of Atty. General and Reporter, Nashville, TN, Ronald W. McNutt, Mitch, Grissim & Assciates, NAshville, TN, Chalres A. Miller, Julie L.B. Johnson, Robert D. Wick, Covington & Burling, Washington, DC, Katherine Anne Brown, Linda A. Ross, Sue A. Sheldon, Office of Atty. General and Reporter, Nashville, TN, for Defendant.

## *MEMORANDUM*

HAYNES, District Judge.

Plaintiffs, Michael Rosen, Barbara Huskey, Emanuel Martin, by his next friend,

Cheryl Martin; Wanda Campbell, Connie Hoilman, Mark Hughes, Jacob B., by his next friend, Martin B.; Jackie Baggett, Brenda Clabo and Pradie Tibbs, filed this action under 42 U.S.C. § 1983 against the Defendant, the Tennessee Commissioner of Finance Administration, asserting claims that the Commissioner's administration of Tennessee's TennCare plan, a managed health care program established under Title XIX of the Social Security Act, 42 U.S.C. 1396 *et seq.*, violates Plaintiffs' procedural rights under the Due Process Clause of the Fourteenth Amendment and applicable federal regulations.

In earlier proceedings, the Court granted Plaintiffs' motion for a preliminary injunction (Docket Entry No. 27) that was modified later by Agreed Order. (Docket Entry No. 53). On April 28, 2000, Plaintiffs renewed their motion for preliminary injunction (Docket Entry No. 87) and later filed an application for a Temporary Restraining Order (Docket Entry No. 92), citing the Defendant's continuing violations of the Court's injunction, the parties' settlement agreement and Plaintiffs' procedural due process rights. The Court granted the Plaintiffs' application for a temporary restraining order (Docket Entry No. 90). The Plaintiffs then filed a motion to hold the Defendant in contempt. (Docket Entry No. 112). By agreement of the parties, the prior Restraining Order was subsequently modified (Docket Entry No. 166).

Thereafter, the parties engaged in negotiations and the Court reserved consideration of the Plaintiffs' preliminary injunction motion. The parties then agreed to settle their remaining disputes as reflected in their Agreed Order (Docket Entry No. 171), that granted class members the right to re-enroll in the TennCare program with revised procedures to address Plaintiffs' due process claims. For a period of two years after the entry of the Order, the Defendant was required to file quarterly reports to document their compliance with the terms of the Order and the parties' settlement agreement. *Id.* at p. 11.

Before the Court is Plaintiffs' motion to enforce the Agreed Order (Docket Entry No. 171), asserting that the Defendant is imposing upon class members the financial requirement of payment of all past premiums to be reinstated with TennCare coverage. Second, Defendants are allegedly denying due process to class members with Serious and Permanent Mental Illness (SPMI) and Severely Emotional Disturbed Children (SEDC), by referring them to local community health centers that lack any process to perform their roles as facilitators of these persons' eligibility for TennCare coverage. These class members allegedly do not receive adequate notice of TennCare coverage of mentally ill persons or are denied coverage with an inadequate statement of reasons for the denial and/or without citation to relevant law for the denial of coverage. The latter are allegedly due process violations of federal regulations governing the TennCare program. In the Agreed Order, the Defendant promised to abide by these regulatory due process requirements.

In response, the Defendant asserts that TennCare's policy requiring payment of all past premiums to re-enroll is a long-standing requirement of the TennCare program for those persons who were dropped from the TennCare program and such a policy is consistent with the Agreed Order. As to the referrals of class members to community health centers, those agencies assist and facilitate the evaluation of whether class members are eligible for TennCare coverage or the TennCare Partners program as persons with SPMI and/or as SEDC, but TennCare makes the final decision on coverage.

For the reasons set forth below, the Plaintiffs' motion to enforce the Agreed Order is granted. As a matter of law, the Court must construe the Agreed Order to preserve the basic relief for which the Plaintiffs bargained in the Agreed Order. The Defendant's wooden application of its past premium payment rule undermines the position bargained for by the Plaintiffs in the Agreed Order because under the stipulation, the payment policy applies to only those class members who were given due process at the time of their termination. The Agreed Order was designed to address applicants who did not receive due process in their termination from TennCare. Further, the Court concludes that enforcement of such a rule completely forecloses any meaningful remedy to these class members. This conclusion does not bar the Defendant's collection of past due premiums under its deferred payment policy for current TennCare enrollees. Further, the Court concludes that the Defendant's existing process for TennCare applicants with serious mental illnesses does not provide adequate notice in the application procedures to inform these class members of their coverage eligibility. The Defendant's denials of these class members' applications also fail to comply with due process requirements for the notice's inadequate statement of reasons for the denials and failure to cite the applicable law for the denials.

## A. ANALYSIS OF THE MOTION

The pertinent portions of the Agreed Order that are the subject of this motion provide, as follows:

1. *The defendant Commissioner of Finance and Administrations is preliminarily and permanently enjoined from terminating, reducing or suspending the TennCare coverage of members of the plaintiff class who are enrolled in the TennCare program, without affording such individuals notice and an op-portunity for a hearing in accordance with 42 C.F.R. Part 431, Subpart E.* The defendant is further preliminarily and permanently enjoined from failing to afford such notice and opportunity for a hearing when the class members' application(s) for TennCare are denied.

\* \* \* \* \* \*

(a) Subject to the exclusions noted below, the defendant shall mail notices to all individuals, not currently enrolled, whose TennCare coverage was terminated at any time between July 11, 1998, and 60 days after the entry of this order. Issuance of the notice shall begin no later than 60 days after the entry of this order; and end by 120 days after the entry of this order; the distribution of mailings within that period shall be such that the average length of time for issuance of the mailings as a whole shall not exceed 90 days from the entry of this order. *Those notified shall include any individuals who lost Medicaid coverage during this period and never retained TennCare coverage.* Excluded from this notice requirement is any individual whose eligibility was terminated upon verification of his death, upon his written request, pursuant to an order entered by Administrative Law Judge, or pursuant to the policies or procedures appended to the agreed order entered February 9, 2001 (Docket Entry No. 166) [enrollees were incarcerated, have moved out of state, or have access to insurance]. *The notice will offer these former enrollees the opportunity to reapply for TennCare as a waiver eligible, with waiver of closed enrollment for uninsured adults. Recipients of the notice will be given 60 days within which to apply for reinstatement. Coverage will be effective the date the completed application is*

*received by the TennCare Bureau.* Former enrollees who received this notice shall be informed that they may appeal to seek a coverage date retroactive to the date of the termination of their coverage, subject to the requirements that they established their eligibility as of the earlier date, and pay any premiums incurred between that date and the end of the period for which coverage is sought. *If the applicant for reinstatement is not currently eligible (except that closure of enrollment to uninsured adults will be waived), reinstatement will be denied in conformity with the procedural safeguards contained in 42 C.F.R. Part 431, Subpart E.*

(Docket Entry No. 171, Agreed Order at pp. 2, 3–4) (emphasis added). There was also to be a "waiver of closed enrollment for uninsured adults." *Id.* at p. 3.

To be sure, under ¶ 2(a) and ¶ 2(c), for former enrollees seeking retroactive coverage, such enrollees must "pay any premiums incurred between that date [of the original termination] and the end of the period [of re-enrollment]." *Id.* at pp. 4, 5.

The parties entered a stipulation on the Defendant's policy for payment of back premiums by class members seeking to reenroll in the TennCare program under the Agreed Order.

1. It is the policy of the TennCare bureau that enrollees who are in arrears in paying their premiums may arrange an installment plan allowing them to pay off the arrearage over a period of time, while still retaining their TennCare coverage. This payment arrangement is available only while an individual is enrolled. Once disenrolled, the person must pay the entire arrearage both that he owes before his TennCare coverage will be reinstated. With regard to members of the plaintiff class who are entitled to notice relief under the Agreed

Order, it is the defendants' position that, because the class members have been disenrolled, they cannot avail themselves of the installment payment policy. The defendants take the position that the plaintiffs must prepay the entire amount of any premium arrearage accrued prior to their disenrollment, in order to be reinstated under the terms of the Agreed Order.

(Joint Exhibit No. 1, Stipulation of the Parties at pp. 1–2).

As to the impact of the Defendant's policy, the Plaintiff presented the testimony of Lenny Croce, an attorney with the Rural Legal Services of Tennessee program whose practice involves providing legal services to individuals who may qualify for TennCare coverage. One of Croce's clients had a documented history of serious mental illness, i.e., schizophrenia, that was previously diagnosed at a local community health center in 1989. This client had been terminated from the TennCare program for his inability to pay premiums, but pursuant to the Agreed Order, this client reapplied for the TennCare benefits, but was denied for failure to pay all of her past TennCare premiums. (Plaintiff's Exhibit No. 1, Croce Affidavit at ¶¶ 3 and 4). This class member is unable to pay the premiums for TennCare as well as for medications prescribed for her son's illness.

In a letter responding to Croce, the Defendant's assistant general counsel cited an option for class members who are unable to pay all of the past premiums.

*The general rule is if an individual was previously terminated by TennCare for failure to pay premiums and was afforded due process regarding the termination, then the individual would indeed need to pay all back premiums. However, if at this time an individual's situation is such that he would qualify for Medicaid, then he can obtain Medic-*

aid coverage and then apply for Tenn-Care without paying back premiums. If an individual obtains Social Security Disability benefits, then he is automatically eligible for Medicaid.

(Plaintiff's Exhibit No. 1, Attachment thereto at p. 40) (emphasis added).

As to the applications of class members with serious mental illnesses, on March 14, 2001, a week after the parties submitted the Agreed Order and two days after the entry of the Agreed Order, Croce wrote the Defendant's general counsel seeking guidance for TennCare applications for persons with serious mental illnesses.

> Sometime ago I wrote to you concerning the TennCare category for seriously ill or persistently mentally ill persons who have lost or been denied TennCare eligibility. This category of enrollees is described in Rule 1200–13–12.02(8). However, the rules do not provide any procedure for these persons to apply. I have contacted local mental health organizations and other agencies. None of them know how to go about applying or qualifying for the TennCare Partners Program as SPMI.

*Id.* at 37.

The rule cited in Croce's letter reads as follows:

(8) TENNCARE PARTNERS PROGRAM

> (a) Persons who are enrolled in the TennCare program are automatically enrolled in the TennCare Partners Program, which is the component of the TennCare program that deliver mental health and substance abuse services. Persons who are disenrolled from the program are also disenrolled from the TennCare Partners Program, except in the situation described in Section (8)(a).
>
> (b) *Certain persons who have lost or been denied TennCare eligibility may be eligible for TennCare Part-*

*ners Program without being eligible for TennCare. These persons must meet the following criteria:*

> 1. They have been identified by the Tennessee Department of Mental Health and Mental Retardation or its designee as Seriously and/or Persistently Mentally Ill or Seriously Emotionally Disturbed;
>
> 2. Their family incomes do not exceed 100% of the federal poverty level, consistent with the figures provided in 1200–13–12–.05;
>
> 3. They have been determined ineligible for TennCare; and
>
> 4. *They do not have health insurance.*

(c) TennCare enrollees who lose TennCare eligibility will automatically lose eligibility for the TennCare Partners Program, except if they meet the criteria outlined in (8)(b). *Persons who meet these criteria may participate in the TennCare Partners Program even though they do not participate in the TennCare Program.* These non-TennCare eligible persons will be disenrolled from the TennCare Partners Program under the following circumstances:

> 1. When the individual no longer meets the criteria outlined in (8)(b) or is found to have falsified information provided to the Tennessee Department of Mental Health and Mental Retardation and approval was based on this false information.
>
> 2. When the individual who voluntarily enrolled in the TennCare Partners Program voluntarily requests disenrollment;
>
> 3. When the individual moves out of State;

4. When the individual abused the TennCare Partners Program (for example, by using or allowing an ineligible person to use the individual's identification card to seek or obtain drugs or supplies illegally or for resale, subject to State and federal laws and regulations); or

5. Death of the individual.

(Plaintiff's Exhibit No. 1, Appendix A at pp. 21–22) (emphasis added).

On April 12, 2001, in response to Croce's letter of inquiry on behalf of a class member, the Defendant's assistant general counsel wrote about the applications process for class members with an SPMI.

Your letter asked about how a person can apply for just TennCare Partners Program as SPMI. There is a separate eligibility class for individuals who are identified as Severely and/or Persistently Mentally Ill (SPMI). SPMI individuals are eligible as uninsurable through a process designed to identify the severity of the illness. Application as an uninsurable may be made by SPMI individual through a Regional Mental Health Institute or any Community Mental Health Center. The facility does the work, submitting proper documentation—a "CRG" (Clinically Related Group) evaluation which designates a person as proper status for this coverage. Certain financial guidelines have to be met as well.

The TennCare Partners Advocacy Line, 1–800–758–1638 is a good source of information regarding any and all BHO issues, including enrollment procedures and scope of coverage. The persons at the Advocacy Line are specially trained to discuss these issues. Also the TN Department of Human Services information line, 1–888–863–6178, can provide information about Medicaid and benefits, and 1–800–772–1213 is the Social Security Administration information line regarding SSI eligibility and benefits.

*Id.* Appendix A at pp. 40–41.

In September, 2000 another of Croce's clients had been at a local medical center on an emergency basis and applied for TennCare coverage. *Id.* at p. 2. DHS records reflected that the application was received, but due to the patient's failure to followup, that application was not approved. *Id.* After an acute psychiatric crisis in December, 2000, this class member submitted another application, but on January 11, 2001 that application was denied by TennCare for failure to pay premiums. *Id.* at p. 3. When Croce sought to inquire of the local community health center on how his client's could re-enroll as SPMI, the local community health center's representative[1] was unaware of how that process worked. *Id.* at p. 4.

Mary Sims is a class member who has been diagnosed as having major depressive disorder, but was denied re-enrollment due to a period of closed enrollment. *Id.* at pp. 43–44. On December 6, 2000, Sims was hospitalized with serious mental health problems. *Id.* at p. 55A. On June 8, 2000, Sims was given provisional TennCare coverage for six months based upon information provided by a Behavioral Health Organization, *id.* at p. 55, but TennCare set a hearing before extending full benefits. *Id.*

---

1. The Defendant asserted hearsay objections at the hearing. The Defendant deems the local community health center as its agent for these applications. The Defendant also deems this agent knowledgeable about the application process. Thus, the Court concludes that the agent's statement of his lack of knowledge of the application process is not hearsay, but is an inconsistent statement of the Defendant's agent on a matter within the scope of his authority. Fed.R.Evid. 801(d)(2)(C) and (D). The Court did not consider any hearsay statements for these findings.

at pp. 59–60. The hearing was aborted with TennCare's July 5th approval after Croce gave the Defendant's general counsel her medical records. *Id.* at pp. 61–63. Croce also informed the Defendant's counsel that as a person with SPMI, TennCare's regulations did not require Sims to obtain an insurer's letter of denial. *Id.* at p. 62, citing Rule 1200–13–12–.02(8)(b) (quoted *supra* at pp. 6–8).

The Plaintiffs also cite the testimony at the October 2, 2000 hearing on the preliminary injunction motion, where Bryanna Morris testified of her repeated efforts to obtain insurance coverage for her son who had been diagnosed with manic depression with several suicide attempts. See Docket Entry No. 143 at pp. 141–144. Despite her letters and appeals, she was never notified that her son may have been eligible for SPMI coverage. *Id.* at p. 148. Before Morris could obtain coverage, her son shot himself and died. *Id.*

Neither the Defendant's TennCare application nor its letter denying an application claim nor the reassessment notice informs an applicant with SPMI or SEDC how to apply for coverage. (Plaintiff's Exhibit No. 1, Croce Declaration, Appendix B at pp. 48–51). TennCare's notice to Sims did not refer to a SPMI status. *Id.* As to its reasons for denials, the TennCare letter told Sims

[x] Your application said you don't have health insurance. But, we don't think you are in one of the groups of uninsured people TennCare accepts now. (TennCare rule number 1200–13–12.03(1)(a)). TennCare rules require that you submit proof that you are uninsurable at this time. The proof required is a letter—— dated within the past 12 months—— from an insurance company, which is denying you health coverage because of a pre-existing condition. (You must

be turned down for a health condition. If you are denied coverage due to your occupation, you do not qualify for TennCare as an "uninsurable." If you have been turned down for pregnancy or any other condition expected to last less than twelve months, you do not qualify for TennCare as "uninsurable."). You have *not* sent us this proof. *Id.* at p. 48. There was not any cited legal authority for the denial under the TennCare rule governing SPMI.

There was an attachment to the denial letter that reads, in relevant part:

**If you have a health, learning, or mental health problem**

You may have more legal rights under the Americans with Disabilities Act (ADA). When you appeal, tell us about any special help that you need to do your appeal. Call the TennCare Information Line at 1–800–669–1851. This is a free call. In Nashville, call 741–4800.

\* \* \* \* \* \*

**Need help with mental health care or drug or alcohol treatment under TennCare?**

Then call the TennCare Partners Advocacy line. Their phone number is 1–800–758–1638. This is a free call. In Nashville, call 242–7339. If you use a TTY machine, call 1–800–772–7647. In Nashville call the TTY line at 313–9240.

*Id.* at Appendix B at p. 52.

Another class member with a mental illness applied for TennCare coverage but on May 17, 2001, TennCare denied coverage citing the presence of her other insurance coverage. *Id.* at p. 67. Yet, this class member noted that her prior coverage expired on April 30, 2001. *Id.* This class member was informed of the denial of her application and her right to a reas-

sessment, *id.* at p. 68, and as to her mental illness, the class member was told:

> If you do not qualify for TennCare, you may still qualify for the TennCare Partners Program. The TennCare Partners Program is the part of the TennCare program that covers mental health and substance abuse services. There are a limited number of places in this program for people who are not eligible for Tenn-Care. If you or someone in your family has a serious mental illness and your family income is no more than the Federal proverty level, the you may qualify. For more information, please call 1–800–758–1638 or 532–7339 (local Nashville area). If you are hearing impaired and use a TTY machine to talk on the phone, please call 1–800–758–1649 or 532–7340 (local Nashville area).

*Id.*, Appendix C at p. 69.

In her reassessment request, the class member cited her "severe depression, anxiety, nerves and seizure disorder," *id.* at p. 70, as well as her checking the box that she could not get medical insurance. *Id.* Yet, her application was denied again for lack of a denial of coverage letter from her former insurer. Rule 1200–13–12.02(8)(b)(4) only requires a lack of insurance, not a letter of denial of insurance coverage.

The Defendant submitted the testimony of Sherry Frazier Harrison, deputy commissioner for mental health services and who previously served in the TennCare program for mental health services. According to Harrison, to qualify for Tenn-Care as uninsurable, an applicant must have a letter from an insurance company denying coverage or has to be severely mentally ill that also can be established by an insurance company's letter of denial of coverage. The latter group of applicants

may also go to a regional mental health institute ("RMHI") or a community mental health center ("CMHC")[2] to receive an assessment that operates as a provisional certification for severely mentally ill status and eligibility for TennCare coverage. The Plaintiffs provided proof of the certification forms that are completed by the relevant agency. Plaintiff's Exhibit No. 2. There are, however, not any applications for an applicant to complete to obtain mental health coverage under TennCare.

According to Harrison, these RMHI or CMHC agencies are needed to determine eligibility for the TennCare program. These agencies submit the TennCare request forms and their mental health assessments to TennCare. The final assessment of an applicant's rating of his or her mental status is conducted by the Department of Human Services. The application is then forwarded to TennCare for the final determination of TennCare coverage. DHS workers are also in hospitals to evaluate patients for eligibility for TennCare for severe mental illnesses. Harrison testified that an applicant's mental limitations and/or privacy concerns may motivate them to go to DHS for an evaluation. Harrison stated that there is not a written protocol for the reference to these local agencies, but there is a contract between TennCare and TDHS for its assessment services.

According to Harrison, TennCare Partners is the mental health and substance abuse component of the TennCare program. This program focuses upon and is intended to insure coverage of mentally ill persons. To obtain TennCare Partners services, a general application to TennCare is required unless there is a judicial commitment or the State is otherwise respon-

---

**2.** The Court notes in this regard that Croce testified that private psychiatric hospitals that are TennCare providers can also provide

these mental health assessments. One such private entity submitted the forms for these assessments. See Plaintiff's Exhibit No. 2.

sible for the applicant. The TDHS also assists in the evaluation process for the TennCare Partners program. The Tenn-Care Partners program is state funded.

According to deputy commissioner Harrison, an applicant's mental limitations and the identity of the person or entity contacted for information on mental illness eligibility under TennCare, may cause class members to receive different information on what is necessary to apply and obtain TennCare coverage of the class member's mental illness.

Dena C. Bost, director of project management for the TennCare Bureau, testified about letters to class members, including denial letters. The proposed denial letter provides, in pertinent part:

● **Do you have *mental health or emotional problems?*** You may be eligible for TennCare if you are having mental health or emotional problems. Contact your local community mental health clinic. They will help you.

Defendant's Exhibit No. 1 at p. 2.

There was a dispute about whether this latest proposed letter should have been disclosed in response to Plaintiffs' counsel's subpoena for this hearing, but the Court does not discern any material differences from the earlier TennCare letters insofar as there are references to applicants seeking coverage for a mental illness.

### B. Conclusions of Law

■■■ The parties' agreement to settle their disputes is reflected in the "Agreed Order" (Docket Entry No. 171) that is, in effect, a Consent Decree. Consent "decrees are settlement agreements 'subject to continued judicial policing.'" *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Michigan Dept. of*

*Natural Resources,* 141 F.3d 635, 641 (6th Cir.1998) *cert. denied* 525 U.S. 1040, 119 S.Ct. 590, 142 L.Ed.2d 533 (1998) (quoting *Vanguards of Cleveland v. City of Cleveland,* 23 F.3d 1013, 1017, 1018 (6th Cir. 1994)) (citing *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983)). In addition, a consent decree must be construed 'to preserve the position for which the parties bargained.' *Id.* at 641 (quoting *Vanguards*). "A District Court has the jurisdiction to enforce consent decrees." *Id.* at 641, citing *Vanguards.* Thus, the Court has jurisdiction to decide this motion.

■■■ For governing principles on private settlement agreements, the Sixth Circuit stated that "[s]ettlement agreements are a type of contract subject to principles of state law." *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992). "It is well established that 'a court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.'" *Brown v. County of Genesee,* 872 F.2d 169 (6th Cir. 1989) (quoting *Brock v. Scheuner,* 841 F.2d 151, 154 (6th Cir.1988)); *Accord Mallory v. Eyrich,* 922 F.2d 1273, 1279 (6th Cir.1991). Yet, for a private agreement, the Court must expressly retain jurisdiction to enforce the settlement agreement and in order to conduct any further proceedings after a dismissal order. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).[3]

■■■ Under Tennessee law, as a matter of general contract law principles, "the ascertainment of the intention of the parties to a written contract is a question of law or judicial function for the court to perform when the language is plain, simple and unambiguous, *Petty v. Sloan,* 197 Tenn. 630, 277 S.W.2d 355 (1955); *Forde v.*

---

**3.** Here, the parties also agreed to file compliance reports for two years from the date of entry of the Agreed Order. (Docket Entry No.

171 at p. 11). Thus, there is an alternate basis for the Court's jurisdiction.

*Fisk University,* 661 S.W.2d 883, 886 (Tenn.Ct.App.1983), but, where the writing is not plain and unambiguous, and is such to require the aid of parol evidence, and the parol evidence is conflicting or such as admits of more than one conclusion, it is not error to submit the doubtful parts under proper instructions to the trier of fact." *Forde,* 661 S.W.2d at 886.

■■■ Yet, ambiguity as to a contract's terms is not created because the parties disagree as to its meaning. *Oman Construction Co. v. Tennessee Valley Authority,* 486 F.Supp., 375, 382 (M.D.Tenn.1979). One party's view of the contract does not necessarily mean that such provisions are part of the contract. *In re D.L. Bouldin Construction Co.,* 6 B.R. 288 (Bankr. E.D.Tenn.1980). Tennessee law generally allows enforcement of the parties' contract as written without questioning the wisdom of the contract or the harshness of its enforcement absent some public policy consideration. *Metropolitan Life Insurance Co. v. Humphrey,* 167 Tenn. 421, 425–26, 70 S.W.2d 361, 362 (1934); *Wilson v. Scott,* 672 S.W.2d 782, 786 (Tenn.Ct.App. 1984). See also, *In re Dynamic Enterprises,* 32 B.R. 509, 518 (Bankr.M.D.Tenn. 1983).

■■■ Under Tennessee contract law, "modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. There must be the same mutuality of assent and meeting of minds as required to make a contract." *Balderacchi v. Ruth,* 36 Tenn.App. 421, 256 S.W.2d 390, 391 (1952). Tennessee law also imposes an implied duty of good faith dealing in every contract. *Wallace v. National Bank of Commerce,* 938 S.W.2d 684 (Tenn.1996). Yet, this duty "does not extend to the formation of the contract...[nor] beyond the terms of the contract and the reasonable contractual expectations of the parties." *Id.* at 687.

The distinction between the consideration of the Consent Decree under federal law and a private settlement agreement under state law appears to be insignificant at least to the core consideration of preserving the positions bargained for by the parties in their agreement and in accordance with its terms.

■■■ As to the Defendant's policy requiring full payment of back premiums, that policy represents a long-standing rule of the TennCare program and appears to be a reasonable position for program management. In their discussions preceding the Agreed Order, counsel for the parties did not consider this premium payment policy and its potential impact upon terminated enrollees. Yet, as administered, this policy applies where

> The general rule is an individual was previously terminated by TennCare for failure to pay premiums *and was afforded due process regarding the termination,* then the individual would indeed need to pay all back premiums.

(Plaintiff's Exhibit No. 1, Attachment thereto at p. 40) (emphasis added).

In their Agreed Order, the parties agreed to allow re-enrollment of class members who had not received adequate notice, including inadequate notices of the past premiums, but paragraphs 2(b) and (c) of the Agreed Order also require payment of any premiums due. While the Court did not adjudicate the merits of Plaintiffs' claims, the basic purpose of the Agreed Order was to provide due process for class members who were allegedly denied due process. This cited policy, as administered, applies only to enrollees who were afforded due process. Thus, from the Court's view, the policy should not apply to class members covered by the Agreed Order.

Moreover, these class members are either poor or persons with moderate finan-

cial means. The enforcement of the Defendants' payment policy requiring all back premiums for a time period that includes this three years old litigation, in effect, imposes an economic barrier that renders completely ineffective the relief the Plaintiffs sought to achieve with the Agreed Order. To enforce this payment of all back premiums policy effectively undermines the position bargained for by the Plaintiffs in the Agreed Order.

The Defendant can still achieve payment of all back premiums. The Defendant has another payment policy for prorated payment of premiums for current enrollees who are delinquent. By extending its prorata payment policy to allow class members and terminated enrollees with financial difficulties to re-enroll, the Defendant's legitimate financial interests can be served. The Court is unable to discern any injury to the Defendant by this ruling that preserves the basic position bargained for by the Plaintiffs and the Defendant in the Agreed Order.

 Finally, for the procedural due process obligations in the Agreed Order, the Defendant agreed to abide by the requirements of 42 C.F.R. § 431, Subpart E. Under this Subpart, a notice of any action by the agency affecting their claim under the Medicare program must state "the reasons for the intended action" and the "specific regulations that support...the action." 42 C.F.R. §§ 431.206(b)(2) and 431.210(b)(c). Section 431.210 provides

> A notice required under § 431.206(c)(2), (c)(3) or (c)(4) of this subpart must contain

> (a) A statement of what action the State...intends to take;

> (b) The reasons for the intended action;

> (c) The specific regulations that support, or the change in Federal or State law that requires, the action;

> (d) An explanation of—-

> (1) The individual's right to request an evidentiary hearing if one is available, or a State agency; or

> (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

> (e) An explanation of the circumstances under which Medicaid is continued if a hearing is required.

*Id.* Similar requirements are imposed for any hearing decision after the applicant requested a hearing on an agency's adverse termination. 42 C.F.R. § 431.220 and 431.244(e)(1) and (2). For any erroneous action, the agency must afford relief retroactive to the date of the inappropriate decision. 42 C.F.R. § 431.246.

There are other provisions of Subpart E that are relevant here. 42 C.F.R. § 435.902 requires the Defendant's policies and procedures to provide for the "simplicity of administration" and to serve "the best interest of the applicant or recipient." For local agencies that are part of the plan, the state agency must:

> (a) Have methods to keep itself currently informed of the adherence of local agencies to the State plan provisions and the agency's procedures for determining eligibility; and

> (b) Take corrective action to ensure their adherence.

42 C.F.R. § 435.903(a) and (b). In addition, Subpart E requires the agency to provide written information to applicants seeking coverage.

> (a) The agency must furnish the following information in written form, and orally as appropriate, to all applicants and to all other individuals who request it:

> (1) The eligibility requirements.

> (2) Available Medicaid services.

> (3) The rights and responsibilities of applicants and recipients.

(b) The agency must publish in quantity and make available bulletins or pamphlets that explain the rules governing eligibility and appeals in simple and understandable terms.

42 C.F.R. § 435.905(a) and (b).

For the mentally ill class members who have SPMI or who are SEDC, the TennCare application papers of their TennCare coverage and the Defendant's denial letters provide inadequate notice of the reasons for the denial. The TennCare application and initial letter of denial do not inform class members that if they have a mental illness such as SPMI or are a SEDC, that condition may qualify them for the TennCare program without a denial letter from an insurance company.

The Court also concludes that as reflected in Croce's letter and Harrison's testimony, the role and duties of the RMHIs and CMHCs, as facilitators in the TennCare program, are not always clearly defined for those agencies' personnel. Deputy Commissioner Harrison conceded that an applicant in this category could get varying information on obtaining TennCare coverage depending upon the source contacted. Significantly, in the Court's view, there is not proof of a written protocol for the TennCare's referral of applicants to a RMHI or CMHC defining its duties and responsibilities as well as the scope of TennCare coverage of SPMI and SEDC applicants. These duties and responsibilities need to be clarified further in writing. Although the TennCare bureau makes the final decision, the class members are referred as a matter of course to the RMHI or CMHC. With its certification function, that agency's inaction can result, as a practical matter, in the denial of a TennCare application. Without a written protocol, there is the prospect that uninformed RMHI or CMHC personnel by claiming unawareness or lack of information on the evaluation process, may effectively deny a class member's application without notice and thereby deny any administrative appeal of the agency's inaction.

While the Plaintiff's proof has not established that applicants with serious mental illnesses are routinely denied their procedural due process rights, the proof does reveal structural deficiencies in the notices to class members required by applicable rules and regulations for the TennCare. See 42 C.F.R. §§ 435.905(a) and (b). There is also a structural deficiency in the lack of a written protocol for RMHIs and CMHCs as required by 42 C.F.R. § 435.903(a) and (b). Although Plaintiffs' proof of such noncompliance is isolated, these structural deficiencies need to be remedied for the protection of the due process rights of these particularly vulnerable class members. The new TennCare denial letter also needs to cite the legal authority for the denial so as to enable a meaningful appeal of the initial denial. These requirements are set forth in 42 C.F.R. Part 431, Subpart E with which the Defendant agreed to comply.

Accordingly, the Court grants the Plaintiffs' motion to enforce the Agreed Order so as to require the Defendant to extend to covered class members seeking to re-enroll into the TennCare program, the opportunity for a *pro rata* payment of back premiums and a more effective notice in the application process and the denial of coverage to class members who are SPMI or SEDC in the application process.

An appropriate Order is filed herewith.