**CHEYENNE–ARAPAHO TRIBES OF INDIANS OF OKLAHOMA, Hoopa Valley Tribe, et al.**

v.

**The UNITED STATES**

**Nos. 342–70, 343–70.**

United States Court of Claims.

Feb. 10, 1982.

---

Patricia L. Brown, Washington, D. C., attorney of record, for plaintiff; Wilkinson, Cragun & Barker, Washington, D. C., of counsel.

Robert E. Fraley, Washington, D. C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## OPINION

PER CURIAM:

This matter comes before the court on plaintiff Hoopa Valley Tribe's motion of January 5, 1982, that the court adopt Trial Judge Thomas J. Lydon's recommendation for entry of final judgment (which was filed December 3, 1981), and that judgment be entered in favor of that plaintiff for $669,150.51. (The trial judge's opinion and recommendation are set forth hereafter.) Defendant has stated that it will not seek review of the Trial Judge's recommendation, and it has not opposed plaintiff's motion.

The court agrees with the trial judge's opinion and recommendation, and therefore, without oral argument, affirms and adopts that opinion and recommendation as the

basis for its judgment and action in this matter.

Accordingly, judgment is hereby entered in favor of plaintiff Hoopa Valley Tribe in the amount of six hundred sixty-nine thousand one hundred fifty dollars and fifty-one cents ($669,150.51) pursuant to the terms of the settlement agreement between the parties as follows:

a. this judgment shall finally dispose of all rights, claims and demands which the plaintiff has asserted or could have asserted against defendant in Docket Nos. 342–70 and 343–70 and all claims, counterclaims and offsets which defendant has asserted or could have asserted against plaintiff with respect to the claims in the above dockets;

b. this final judgment shall be by way of compromise and settlement and shall not be construed as an admission by either party for the purpose of precedent or argument in any other case; and

c. entry of this final judgment in favor of plaintiff Hoopa Valley Tribe shall not in any way affect the claims of any other plaintiff in Docket Nos. 342–70 and 343–70.

The court also denies defendant's motion to consolidate.

## OPINION AND RECOMMENDATION OF TRIAL JUDGE

LYDON, Trial Judge:

This matter is before the court on a motion by the Hoopa Valley Tribe, one of several plaintiffs in these two consolidated cases, for entry of final judgment in its favor, and defendant's opposition thereto in which defendant, in addition, includes a motion requesting that the claims of the Hoopa Valley Tribe be extracted from these two cases and consolidated with the pending case of *Short v. United States*, Defendant, and *Hoopa Valley Tribe of Indians*,

Defendant-Intervenor, Ct.Cl. No. 102–63. The matter in question had its genesis in two petitions filed in this court on October 8, 1970. In the first petition, Docket No. 342–70, the Hoopa Valley Tribe, one of 17 named Indian tribal plaintiffs, seeks to recover damages based on mismanagement (breach of trust) by defendant of certain judgment funds claimed by the tribe. In the second petition, Docket No. 343–70, the Hoopa Valley Tribe, one of 12 named Indian tribal plaintiffs, seeks to recover damages based on mismanagement (breach of trust) of certain tribal funds other than judgment funds claimed by the tribe.

### I.

By decision dated March 19, 1975, on motions for summary judgment, this court outlined the nature and scope of defendant's liability to the Hoopa Valley Tribe, *inter alia*, in Docket Nos. 342–70 and 343–70. *Cheyenne-Arapaho Tribes v. United States*, 206 Ct.Cl. 340, 512 F.2d 1390 (1975). Thereafter, a trial was held in late 1979 and early 1980 to determine the amount of damages suffered by the Hoopa Valley Tribe, *inter alia*.[1] Subsequent to this quantum trial, the parties commenced settlement negotiations.

On August 8, 1980, the Hoopa Valley Tribe, *inter alia*, submitted to the Attorney General a formal offer to compromise and settle the claims of all tribal plaintiffs in the 10 consolidated cases except the claims of the Te-Moak Bands of Western Shoshone Indians as the representative of the Western Shoshone Nation of Indians, a plaintiff in Docket No. 343–70.[2] Under this settlement offer, the Hoopa Valley Tribe proposed to settle its claims in Docket Nos. 342–70 and 343–70 for $669,150.51.

On October 3, 1980, James W. Moorman, Assistant Attorney General, Lands and Natural Resources Division, informed plain-

---

1. This trial embraced the similar claims of 26 separate Indian tribes which had been set forth in 10 separate petitions. These 10 petitions, which included Docket Nos. 342–70 and 343–70, had been consolidated prior to trial for purposes of all further proceedings in the interest of judicial economy and litigation convenience.

2. No offer was submitted on behalf of the Te-Moak Bands of Western Shoshone Indians as the representative of the Western Shoshone Nation of Indians since the attorney's contract to represent the tribe had not been approved by the Department of the Interior. The Department of the Interior refused to approve this contract because some segments of the Western Shoshone Nation of Indians opposed said approval.

tiffs that their settlement offer was accepted subject to the following conditions.

"1. That the proposed settlement be approved by appropriate resolutions satisfactory to the Secretary of the Interior of the plaintiff tribes.

"2. That the approval of the settlement, as well as the resolution of the tribe, be secured from the Secretary of the Interior, or his authorized representative.

"3. That a copy of each resolution and the approval of the terms of the settlement by the Department of the Interior be furnished to this Department.

"4. That the judgment entered into pursuant to this settlement shall finally dispose of all rights, claims and demands which the plaintiff has asserted or could have asserted against defendant in the above dockets and all claims, counterclaims and offsets which defendant has asserted or could have asserted against plaintiff with respect to the claims in the above dockets.

"5. That the Court of Claims shall approve of this settlement and the stipulation before the judgment is entered.

"6. That the final judgment to be entered herein shall be by way of compromise and settlement and shall not be construed as an admission by either party for the purpose of precedent or argument in any other case.

"7. A settlement of the claims in these dockets is understood to except the plaintiff, Te-Moak Band of Western Shoshone Indians, as the representative of the Western Shoshone Nation of Indians in Docket No. 343–70."

The Department of Justice letter concluded as follows:

"The Department of Justice will be happy to work out with you terms of the stipulation and the appropriate motions and orders necessary to carry into effect the offer of settlement subject to the conditions specified herein. · In drawing the Joint Motion for Entry of Judgment, please list the documents which will be introduced in support of the settlement, such as (1) the stipulation, (2) the tribal resolutions, (3) the letter of approval of such other papers that will be offered in evidence at the hearing on the settlement. Copies of these papers shall also be furnished· to the defendant."

The Hoopa Valley Business Council, the authorized governing body of the Hoopa Valley Tribe, entered into a resolution approving the settlement of November 6, 1980. This resolution as well as the terms of the settlement were approved by the Department of the Interior, Bureau of Indian Affairs, on April 2, 1981, subject to the following condition in the last paragraph: "This approval of the settlement is given only on the basis that the proceeds of the compromise settlement will be treated by the Bureau of Indian Affairs as a judgment fund shared by the Hoopa Valley Tribe and those found entitled in [*Short v. United States*, No. 102–63] to receive proceeds from the unallotted assets of the [Hoopa Valley Reservation]." This condition was subsequently removed by the Assistant Secretary for Indian Affairs in a letter dated July 16, 1981, to counsel for the Hoopa Valley Tribe which read in pertinent part:

In the further meetings with you since June 4, you presented information to us which has convinced us that only claims of the Hoopa Valley Tribe have been presented in the subject litigation. Accordingly, in light of our understanding based on the additional information provided about the Hoopa claims, we no longer think it necessary to treat the compromise settlement as involving more than the interests of the Hoopa Valley Tribe. Therefore, since we now regard the compromise settlement as only a compromise of claims of the Hoopa Valley Tribe, the April 2, 1981 approval letter of the Acting Deputy Commissioner of Indian Affairs is hereby modified to delete the last paragraph thereof. As so modified, the Acting Deputy Commissioner's approval of the proposed settlement stands.

As a result of the above actions, the terms and conditions of the offers and acceptances of the parties relative to· the claims of the Hoopa Valley Tribe, *inter alia*, were met and a binding agreement between

them came into being. The settlement offers and acceptances, *supra*, were directed at the claims of 25 Indian tribes, including the Hoopa Valley Tribe. Based on these offers and acceptances the claims of 23 separate Indian tribal plaintiffs were settled and stipulations for entry of judgment were executed and filed by the parties with the court. Thereafter, judgments were entered based on these stipulations.[3] Defendant refused to join in a stipulation for entry of judgment in favor of the Hoopa Valley Tribe and this refusal precipitated the motion for entry of judgment now before the court.

## II.

■ As established above, a reasonable offer of compromise and settlement has been made and validly accepted. Neither party challenges the procedural validity of the settlement agreement that was formed. The agreement was admittedly entered into by persons possessing appropriate authority to bind both parties. Both parties stand to benefit from the settlement by avoiding the risk and expense of submitting extensive briefs and recommended findings of fact to the court for its determination. In this situation, a valid and binding settlement agreement has been created which neither party should be permitted to cast aside without the most compelling of reasons.

Case law supports holding the parties herein to the binding agreement they reached:

* * * Assuming both the power of the attorney to bind his client and the validity of the agreement struck, a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship * * * Moreover, it is equally well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an

action pending before it; the actual merits of the controversy become inconsequential. * * * The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation. * * *

*Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). *See also Backus v. United States*, 75 Ct.Cl. 69, 101, 59 F.2d 242, 257 (1932), *cert. denied*, 288 U.S. 610, 53 S.Ct. 402, 77 L.Ed. 984 (1933); *Gross v. Penn Mutual Life Insurance Co.*, 396 F.Supp. 373 (E.D.Pa.1975).

■ Defendant refuses to sign a stipulation for entry of judgment, the normal procedure for having judgments entered on the basis of settlement agreements. However, defendant's refusal to perform this ministerial act in no way affects the validity and binding effect of the settlement agreement. In the present cases, it is apparent that the parties reached a binding settlement agreement and "it is immaterial that the parties may have contemplated a later, more formal instrument." *Dale Construction Co. v. United States*, 168 Ct.Cl. 692, 709 n.8 (1964). "The actual execution and approval of the formal document 'was not essential to the consummation of the contract.'" *Barclay v. United States*, 166 Ct.Cl. 421, 437, 333 F.2d 847, 857 (1964). It is well settled that a binding contract is created at the time the parties reach a final agreement through offer and acceptance, rather than later when the agreement is formally executed by both sides. *United States v. Purcell Envelope Co.*, 249 U.S. 313, 319, 39 S.Ct. 300, 302, 63 L.Ed. 620 (1919); *Penn-Ohio Steel Corp. v. United States*, 173 Ct.Cl. 1064, 354 F.2d 254 (1965). Thus, the court is merely enforcing an agreement validly entered into by the parties. This is not a case where the court is forcing a settlement

3. The governing body of the Hoopa Valley Tribe and the Department of the Interior have approved settlement of the tribe's claim. The Yankton Sioux Tribe of Indians, a plaintiff in Docket Nos. 342–70 and 343–70, has not yet resolved to approve the settlement negotiated by counsel for the parties. The Te-Moak Bands of Western Shoshone Indians were not involved in these settlement negotiations (*see* n.2, *supra*). The claims of all tribal plaintiffs in 8 of the 10 consolidated cases have been settled. Only the claims of the 3 named plaintiffs, *supra*, in Docket Nos. 342–70 and 343–70 remain for disposition.

on a party without its agreement. *Cf. Bennett Box & Pallet Co., Inc. v. United States,* 218 Ct.Cl. 636 (1978). Without more, a judgment of the court, reflecting the settlement agreement reached by the parties, should follow.

■ As justification for its refusal to execute a stipulation for entry of final judgment, defendant suggests, without evidentiary support, that the Hoopa Valley Tribe may not be "the exclusive owner of the claims involved and the underlying accounts which were allegedly mismanaged by the government" and that the Hoopa Valley Tribe therefore may not possess "the legal ability, upon acceptance of the compromise amount, to fully discharge the government from liability for the alleged wrongs." Defendant's suggestion, *supra,* emanates from its reading of the court's decisions in *Short v. United States,* 202 Ct.Cl. 870, 486 F.2d 561 (1973), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974); *Hoopa Valley Tribe v. United States,* 219 Ct.Cl. 492, 596 F.2d 435 (1979) and *Short v. United States,* Defendant and *Hoopa Valley Tribe of Indians,* Defendant-Intervenor, Ct.Cl. No. 102–63, decided September 23, 1981. The essence of the holding in these cases was that defendant was liable to qualified Indians of the Hoopa Valley Indian Reservation, principally so-called Yurok Indians who inhabited a portion of the Reservation known as the Addition, who were entitled to but did not share in the income from the sale of Reservation timber that defendant had previously distributed to a select group of Reservation Indians *i.e.,* only Indians on the official roll of the Hoopa Valley Tribe.

■ No evidence has been presented herein concerning the government's claim that the Hoopa Valley Tribe may not be "the exclusive owner of the * * * underlying accounts which were allegedly mismanaged by the government."[4] The Hoopa Valley Tribe was clearly "the exclusive owner of the claims involved," regardless of whether they were the exclusive owner of the accounts involved. The Tribe brought these claims and prosecuted them entirely on its own behalf. After ten years of litigation the government entered into a settlement agreement whereby the Hoopa Valley Tribe agreed to compromise its claims in exchange for a sum of money to be paid to the tribe by the government. This condition is expressly stated in the government's written approval of plaintiff's settlement offer, *i.e.,* "the judgment entered into pursuant to this settlement shall finally dispose of all rights, claims and demands which the plaintiff [the Hoopa Valley Tribe] has asserted or could have asserted against defendant in the above dockets." The government has therefore received all that it bargained for, namely the release from liability for claims asserted by the Hoopa Valley Tribe. The Hoopa Valley Tribe has fulfilled its part of the agreement by relinquishing "all rights, claims and demands" which it had asserted against the government; the government is now attempting to avoid its part of the agreement by a belated assertion that the claim relinquished by the Hoopa Valley Tribe may not be as liability-insulated as the government had assumed at the time the settlement agreement was finalized. However, it is

---

4. This case has been before the court for 11 years and no third parties have attempted to assert an interest in the litigation. The defendant has never sought to protect itself from any potential double payment by utilizing the notice procedures provided in Rule 41. Neither has defendant ever sought to join third persons as necessary parties under Rule 62. At this point, it is too late for defendant to avail itself of the court's third-party practice rules. A court should "refuse an attempt to join a new party at this late stage of the litigation when liability has been determined and the court is trying to enforce final relief for the plaintiffs. * * * [T]he additional delay which joinder would trigger is, in this already deplorably in-

terminable litigation, a strong basis for denying the request." *Cabrera v. Municipality of Bayamon,* 622 F.2d 4, 6 (1st Cir. 1980). *See also Barr Rubber Products Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1127 (2d Cir.), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). Whether or not persons other than the Hoopa Valley Tribe actually have an interest in the underlying accounts is not before the court. Upon the entry of a judgment herein, the Department of the Interior will be required to establish a plan for use or distribution of these judgment funds. *See* 25 U.S.C. §§ 1401—1407 (1976). It is expected that this distribution will be in accordance with applicable law.

well settled that once the parties enter into a valid settlement agreement, the merits of the compromised claims become inconsequential. *Hennessy v. Bacon*, 137 U.S. 78, 85, 11 S.Ct. 17, 19, 34 L.Ed. 605 (1890); *Crown Life Insurance Co. v. Springpark Associates*, 623 F.2d 1377, 1380 (9th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *Lee v. Hunt*, 483 F.Supp. 826, 832 (W.D.La.1979), *aff'd*, 631 F.2d 1171 (5th Cir. 1980); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

> Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle.

*J. Kahn & Co., Inc. v. Clark*, 178 F.2d 111, 114 (5th Cir. 1949). The government cannot avoid the settlement agreement it voluntarily entered into by subsequently challenging the merits of the Hoopa Valley Tribe's claims.

▆▆▆▆ Similarly, defendant cannot avoid this settlement agreement by claiming that it entered the agreement under the mistaken belief that the Hoopa Valley Tribe was the sole owner of the underlying accounts which were allegedly mismanaged by the government. "One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen v. Pennsylvania*

R. R. Co., 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948). *See also Anderson v. Ciba-Geigy Corp.*, 490 F.2d 438, 442 (8th Cir. 1974). If a mistake was made in the present case, it was made by the defendant alone. Unlike a mutual mistake, a unilateral mistake is not sufficient to allow the mistaken party to limit or avoid the effect of an otherwise valid settlement agreement. *Kline v. Florida Airlines, Inc.*, 496 F.2d 919, 920 (5th Cir. 1974); *United States v. Bissett-Berman Corp.*, 481 F.2d 764, 768 (9th Cir. 1973); *Virginia Impression Products Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971). It must be emphasized that in the present case the government has not established that a mistake was actually made; no evidence has been presented concerning the extent of the Hoopa Valley Tribe's ownership interest in the accounts at issue. It is concluded that this matter is within the scope of the court's conclusion in *Swift Chemical Co. v. Usamex Fertilizers, Inc.*, 490 F.Supp. 1343, 1356 (E.D.La.1980), *aff'd*, 646 F.2d 1121 (5th Cir. 1981):

> Whatever the truth is, at best only one of the parties could have been mistaken about the issue. A unilateral mistake about a particular fact is insufficient to reform a contract otherwise properly entered into.

*See also, Albano Cleaners, Inc. v. United States*, 197 Ct.Cl. 450, 458, 455 F.2d 556, 560 (1972). Since defendant alleges neither mutual mistake nor fraud [5]—the only two grounds for setting aside a settlement agreement—its attack on this valid settle-

---

**5.** Defendant's present counsel, the fourth to represent the government in this litigation, claims that in February 1981 he learned for the first time that other inhabitants of the Hoopa Valley Reservation may possibly have an interest in the accounts underlying this litigation. However, there has not been, nor could there be, any allegation that the Hoopa Valley Tribe fraudulently misrepresented its interest in these accounts. The same division of the Department of Justice that is defending the government in this case was responsible for defending the government in the litigation which established that the Hoopa Valley Tribe was not the exclusive owner of the timber on the Hoopa Valley Reservation. This latter litigation was initiated in 1963, has been the subject of three decisions of this court, and is still pending before the trial division of this court.

*See, Short v. United States*, 202 Ct.Cl. 870, 486 F.2d 561 (1973), *cert. denied*, 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974); *Hoopa Valley Tribe v. United States*, 219 Ct.Cl. 492, 596 F.2d 435 (1979); *Short v. United States*, Defendant, and *Hoopa Valley Tribe*, Defendant-Intervenor, Ct.Cl. No. 102–63, decided September 23, 1981. Given the lengthy nature of the *Short* litigation and the fact that the government is represented in *Short* by the same division of the Justice Department that is handling the present case, the government must have been aware, at the time this case was filed, of the possibility of other interests in the accounts claimed by the Hoopa Valley Tribe. The fact that (some 11 years later) defendant's present counsel learned for the first time of these matters, accepting that as true, is of no moment.

ment agreement must fail. *Callen v. Pennsylvania R. R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948).

### III.

 In its response to plaintiff's motion for entry of final judgment, defendant included a motion to consolidate this case with *Short v. United States, supra,* a case filed in 1963. As indicated previously, the cases at hand were filed in 1970. Defendant's motion is made extremely late in the course of both this case and the *Short* case. Such untimeliness alone supports denial of the motion to consolidate. *Shooters Island Shipyard Co. v. Standard Shipbuilding Corp.*, 4 F.2d 101, 102 (3d Cir. 1925). The court has expressed its intention in recent decisions to preclude further delay in the disposition of Indian litigation. *See Navajo Tribe of Indians v. United States*, 220 Ct.Cl. ——, ——, 601 F.2d 536, 540 (1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *Minnesota Chippewa Tribe v. United States*, Ct.Cl. No. 19 (order May 8, 1981). Quite apart from the delay factor, consolidation at this late date is likely to unduly prejudice the plaintiff, who has already prosecuted this case for 11 years, and is likely to unduly delay further judicial proceedings in both cases. In the latest decision in the *Short v. United States, supra*, decided September 23, 1981 (slip op. at pp. 13–16), this court expressly directed the trial judge to simplify and conclude the *Short* litigation with dispatch. Consolidation of this case with the *Short* case is likely to complicate and prolong those proceedings, contrary to the court's mandate in its September 23, 1981 opinion in the *Short* case. Consolidation is particularly inappropriate in this case because it would join the Hoopa Valley Tribe with the plaintiffs in a case in which the tribe is already a defendant-intervenor. "This circumstance should be carefully avoided." *Continental Bank & Trust Co. v. OL. s. E. D. Platzer*, 304 F.Supp. 228, 230 (S.D.Tex.1969). Furthermore, defendant has failed to show the existence of a common issue of law or fact—a prerequisite to consolidation. *Continental Bank & Trust Co. v. OL. s. E. D. Platzer*, 304 F.Supp. 228, 229 (S.D.Tex.1969). The

*Short* case involves a dispute relative to the sales proceeds of Hoopa Valley Reservation timber, whereas the present case involves a claim by the Hoopa Valley Tribe against the United States for damages resulting from an alleged failure to prudently invest tribal trust funds. There is thus no similarity of interests between the plaintiffs in the present case and the plaintiffs in *Short*. For all the reasons stated above, the defendant's motion to consolidate should be denied.

### IV.

For reasons discussed above, it is recommended that judgment of six hundred sixty-nine thousand one hundred fifty dollars and fifty-one cents ($669,150.51) be entered for plaintiff in accordance with the terms of the settlement agreed to by the parties, and that defendant's motion to consolidate be denied.