### In re HARBOR FINANCIAL GROUP, INC., et al., Debtors.

### No. 99–37255–SAF–7.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Oct. 21, 2003.

David G. Aelvoet, Linebarger, Goggan, Blair & et al, San Antonio, TX, John H. Albin, Nebraska Department of Labor, Lincoln, NE, Martha S. Allen, Jenkens and Gilchrist, Dallas, TX, Dean N. Alterman, Lane, Powell, Spears & Lubersky, LLP, Portland, OR, Joseph H. Andersen, U.S. Bank National Association, Minneapolis, MN, Paul D. Angenend, Angenend & Augustine, Austin, TX, Christopher J. Archer, Boulder, CO, Daniel J. Artz, MacDonald, Schuble and Artz, Dallas, TX, Terrance P. Baggott, Baggott & Swaim, Houston, TX, Margaret G. Baker, Brown and Shapiro, Pasadena, TX, Wayne R. Barnes, Strasburger & Price, Dallas, TX, Stanton Todd Barton, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, Alan Betten, Tabor, Betten & Berman, Baltimore, MD, Bruce Borrus, Graham & James/Riddell Williams, Seattle, WA, Mark S. Bosco, Tiffany & Bosco, Phoenix, AZ, Amelia A. Bower, Cleveland, OH, Morton R. Branzburg, Klehr, Harrison, Harvey, et al., Philadelphia, PA, Duane J. Brescia, Strasburger & Price LLP, Austin, TX, Kay D. Brock, Assistant Attorney General, Austin, TX, Franklin L. Broyles, Goins, Underkofler, Crawford & Langdon, Dallas, TX, Lawrence Joseph Buckley, The Buckley Firm, Mission Viejo, CA, James H. Burshtyn, Austin, TX, Sonia U.

Chae, Chicago, IL, Lawrence Chek, Jenkens and Gilchrist, Dallas, TX, Don Colleluori, Figari, Davenport & Graves, Dallas, TX, Thomas A. Connop, Locke Purnell Rain Harrell, Dallas, TX, Scott E. Coulson, Tulsa, OK, Gretchen Crawford, Oklahoma City, OK, Robert W. Cusick, Spear & Hoffman, Voorhees, NJ, Mary A. Daffin, Barrett, Burke, Wilson, Castle et al., Houston, TX, Richard G. Dafoe, Vial, Hamilton, Koch and Knox, Dallas, TX, Roy A. Diaz, Smith & Hiatt, P.A., Ft. Lauderdale, FL, C. Bryan Dunklin, Bryan Dunklin & Associates, Dallas, TX, Dennis J. Eichelbaum, Schwartz & Eichelbaum, Plano, TX, Susan L.S. Ernst, Haynes and Boone, Dallas, TX, Tisha L. Federico, Nashville, TN, David J. Fischer, Wildman, Harrold, Allen & Dixon, Chicago, IL, Hugh P. Fisher, III, Stafford, VA, Peter A. Franklin, III, Locke Purnell Rain Harrell, Dallas, TX, Joseph P. Gappa, Oklahoma Tax Commission, Oklahoma City, OK, Paul B. Geilich, Looper, Reed and McGraw, Dallas, TX, Toby L. Gerber, Jenkens & Gilchrist, Dallas, TX, Gregory L. Germain, Landels, Ripley & Diamond, San Francisco, CA, Herbert Jeffrey Gilles, Roberts & Smaby, Dallas, TX, Beatrice Grevel, Devlin, Naylor and Turbyfill, PLLC, Houston, TX, Elizabeth M. Guffy, Baker & Botts, Houston, TX, Patrick C. Guillot, Dallas, TX, Eloise A. Guzman, Linebarger, Goggan, Blair & et al., Houston, TX, Jim D. Hamilton, Ross, Banks, May, Cron & Cavin, Houston, Adam I. Hauser, Brown, McCarroll, Oaks & Hartline, Austin, TX, T. Geoffrey Heekin, Jacksonville, FL, Michael S. Held, Jenkens and Gilchrist, Dallas, TX, Nancy C. Hsieh, Greenberg, Glusker, Fields, et al., Los Angeles, CA, Jeffrey W. Hurt, Hurt & Lilly, Dallas, TX, Nicholas C. Inman, Dallas, TX, Robert B. Jackson, Winstead, Sechrest & Minick, Dallas, TX, Kristin H. Jain, Baker and McKenzie, Dallas, TX, Leonard R. Jordan, Jr., Berry, Quackenbush and Stuart, Columbia, SC, Charles Stephen Kelley, Mayer, Brown & Platt, Houston, TX, Marc Kieselstein, Sachnoff & Weaver, Ltd., Chicago, IL, Walter Lee, Bregman, Berbert and Schwartz, Bethesda, MD, I. Richard Levy, I. Richard Levy, P.C., Dallas, TX, James F. Lewin, Moss, Pite & Duncan, El Cajon, CA, Kevin M. Lippman, Munsch, Hardt, Kopf & Harr, P.C., Dallas, TX, Charles A. Lovell, Providence, RI, Leonard A. Lucas, Boston, MA, Scott Lundberg, Lundberg & Associates, Salt Lake City, UT, David S. MacDonald, Meister and Segrist, Scottsbluff, NE, Diane D. Malfeld, Dorsey & Whitney, Minneapolis, MN, Michael W. Malter, Binder & Malter, Santa Clara, CA, Sherri B. Manuel, Houston, TX, Elaine S. McAnelly, JPMorgan Chase Bank, Houston, TX, Margaret M. McClure, Houston, TX, Karennan McLoughlin, Law Offices of Ronald C. Markoff, Providence, RI, Sidney R. Meadows, McAllen, TX, Randyl S. Meigs, McDonald Sanders, Ft. Worth, TX, Paul A. Mohtares, Goins, Underkofler, Crawford & Langdon, Dallas, TX, Arlette M. Molina, Arlette Molina & Associates, Houston, TX, Steven R. Morasse, Grant & Morasse, Newport Beach, CA, Sheryl L. Moreau, Jefferson City, MO, Anita A. Morse, Office of the Attorney General, Indianapolis, IN, Christopher J. Moser, Quilling, Selander, Cummiskey, et al., Dallas, TX, Mark Xavier Mullin, Haynes and Boone, Dallas, TX, Patrick J. Neligan, Jr., Neligan, Tarpley, Andrews and Foley, Dallas, TX, Glen A. Nordt, Coats, Rose, Yale, Holm, Ryman & Lee, Houston, TX, David William Parham, Baker and McKenzie, Dallas, TX, Robin Eric Phelan, Haynes and Boone, Dallas, TX, James E. Prince, Houston, TX, James Robert Prince, Thompson and Knight, Dallas, TX, Mark H. Ralston, Munsch, Hardt, Kopf & Harr, P.C., Dallas, TX, Mark W. Rathe, Auburn, CA, Peter Michael Reed, McCreary, Veselka, Bragg and Allen, Austin, TX, Peter J. Riley,

128

Thompson & Knight, Dallas, TX, Judith T. Romano, Federman & Phelan, Philadelphia, PA, Judith Weaver Ross, Thompson and Knight, Dallas, TX, Edward L. Rothberg, Weycer, Kaplan, Pulaski & Zuber, Houston, TX, Glen D. Rubin, McCalla, Raymer, Padrick, Cobb, et al., Roswell, GA, Jennifer Salisbury, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, George C. Scherer, Law Offices of Robert E. Luna, Dallas, TX, John D. Schlotter, McCalla, Raymer, Padrick, Cobb, et al., Roswell, GA, James L. Schutza, Dallas, TX, James D. Vick, Vick & Conroyd, Salem, OR, Robert Weinberger, West Virginia Bureau of Employment Programs, Charleston, WV, Elizabeth Weller, Linebarger, Goggan, Blair et al., Dallas, TX, Frantz K. Vital, Ft. Lauderdale, FL, Louis P. Vitti, Louis P. Vitti & Associates, Pittsburgh, PA, Pamela H. Walters, Houston, TX, Lynnette R. Warman, Jenkens & Gilchrist, Dallas, Dean Browning Webb, Vancover, WA, Joseph J. Wielebinski, Jr., Munsch, Hardt, Kopf, Harr, Dallas, TX, Barbara M. Williams, Linebarger, Goggan, Blair & et al., Ft. Worth, TX, David L. Woods, McGuire, Craddock and Strother, Dallas, TX, Michael F. Wurst, Munsch, Hardt, Kopf, Harr & Dinan, Dallas, TX, Eugene K. Yamamoto, Law Office of Eugene K. Yamamoto, Oakland, CA, Randall L. Shepherd, Law Offices of Robert E. Luna, Dallas, TX, Debra K. Simpson, Jones Day, Dallas, TX, Warren H. Smith, Warren H. Smith and Associates, PC, Dallas, TX, Martin A. Sosland, Weil, Gotshal & Manges LLP, Dallas, TX, Walter E. Spears, Bartley & Spears, P.C., Houston, TX, Eric J. Spett, Munsch Hardt Kopf & Harr, Dallas, TX, Arthur A. Stewart, Gardere, Wynne & Sewell, Dallas, TX, Alan S. Trust, Trust Law Firm, Dallas, TX, Lance J. Vander Linden, Brice, Vander Linden and Wernick, Dallas, TX, William M. Vermette, Reese, Broome & Diaz, Vienna, VA, for Creditors.

Michelle E. Shriro, Gerard, Singer Levick & Busch, P.C., Addison, TX, pro se.

William B. Finkelstein, Hughes & Luce, Dallas, TX, for Official Unsecured Creditors' Committee of Distrib–U–Toys, Inc., Creditor Committee.

Stephen A. McCartin, Gardere, Wynne and Sewell, Dallas, TX, for Debtor.

Jerry C. Alexander, Passman and Jones, Dallas, TX, Charles F. Baum, Quilling, Selander, Cummiskey, et al., Dallas, TX, John Paul Stanford, Quilling, Selander, Cummiskey, et al, Dallas, TX, Scott M. Seidel, Passman and Jones, Dallas, TX, for trustees.

Milo H. Segner, Litzler Segner Shaw & McKinney, LLP, Dallas, TX, pro se.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

Nilofer Mirza, executrix of the estate of Mushaf Mirza, moves the court pursuant to 11 U.S.C. § 502(j) and Bankruptcy Rule 3008 to reconsider eleven claims filed by the Mirza estate in the bankruptcy case of Harbor Financial Mortgage Corp., case no. 99–37257–SAF–7 (HFMC). The court administratively consolidated HFMC with the bankruptcy cases of Harbor Financial Group, Inc., NAF, Inc., Hamilton Financial Services Corp., Community National Mortgage Corp., and Calcap, Inc. John Litzler, the chapter 7 trustee of the HFMC estate, opposes the motion. The court conducted an evidentiary hearing on the motion on September 5, 2003.

### Factual and Procedural History

HFMC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 14, 1999. The court con-

verted the case to a case under chapter 7 on December 15, 1999.

On March 2, 2001, the court entered an order setting the bar date for claims by mortgagors for April 16, 2001. N. Mirza asserts mortgagor claims.

Mirza filed the eleven claims on April 19, 2001, in the HFMC case. Some of the proofs of claim did not specify an amount. But, in the motion to reconsider, N. Mirza lists the proofs of claim as follows:

Claim No. 353—Loan No. 308–1320 > $117,000

Claim No. 354—Loan No. 307–9357 > $296,000

Claim No. 355—Loan No. 308–0603 > $120,000

Claim No. 356—Loan No. 307–8706 > $296,000

Claim No. 357—Loan No. 308–0595 > $37,483

Claim No. 358—Loan No. 308–1460 > $279,000

Claim No. 359—Loan No. 308–1528 > $27,766

Claim No. 360—Loan No. 307–9340 > $32,790

Claim No. 361—Loan No. 307–7237 > $2,626.57

Claim No. 362—Loan No. 307–5975 > $80,000

Claim No. 363—Loan No. 308–1395 > $244,000

On January 11, 2002, Litzler filed his objection to Mirza's claims as 1) being late-filed; 2) lacking sufficient documentation to evidence liability of the debtor; and 3) lacking evidence of entitlement to priority treatment. Ambereen Mirza, acting under a power of attorney from N. Mirza on behalf of the Mirza estate, discussed the trustee's objections with Charles Baum, attorney for Litzler. Baum and A. Mirza negotiated an agreement whereby the trustee would agree to resolve the objections to the claims by requesting that the court allow claim 353 as a general, unsecured claim of $117,000 and disallow the remaining claims. Baum sent an e-mail on February 22, 2002, to A. Mirza detailing the agreement and requesting that A. Mirza reply to the e-mail with the statement "This is our agreement" if she agreed with the terms of the settlement. A. Mirza replied to the e-mail with the statement "This is our agreement."

At a hearing on February 25, 2002, the trustee presented the court with the terms of the resolution of the objections to claims 353 through 363. A. Mirza did not attend the hearing. On February 25, 2002, based on the settlement agreement, the court entered its "Order on Trustee's Third Set of Objections to Claims" which allowed claim 353 as a general unsecured claim in the amount of $117,000 and disallowed claims 354 through 363. The court ordered:

that Trustee's objection to Proofs of Claim 354, 355, 356, 357, 358, 359, 360, 361, 362, and 363 filed by Mushat [sic] Mirza be sustained and these claims are disallowed [and] that the Trustee's objection to Proof of Claim No. 353 filed by Mushat [sic] Mirza as an unsecured priority claim in the amount of $117,000.00 has been resolved by agreement of the Trustee and Mirza. Accordingly, the claim is disallowed as a priority claim and reclassified and allowed as a general unsecured claim in the amount of $117,000.00.

Order on Trustee's Third Set of Objections to Claims, February 25, 2002.

On March 31, 2003, the trustee filed his "Motion for Authority to Pay Interim Distribution to Allowed Unsecured Claims" in which he proposed to pay an interim pro-rata partial distribution to general unsecured allowed claimants, including Mirza.

The motion was served via regular U.S. Mail on March 31, 2003, to "Mushat [sic] Mirza, 9 Pilgrim Dr., Sharon, MA 02067." The motion included a notice of hearing on May 14, 2003 at 9:30 a.m.

The court held a hearing on the interim distribution motion on May 14, 2003. A. Mirza did not attend the hearing. By order entered May 15, 2003, the court granted the motion, providing, in part, that claim 353 would receive an interim distribution of $6,561.24.[1]

On June 9, 2003, A. Mirza filed nine proofs of claims purporting to complete previously filed claims. The claims are numbered as follows:

No. 392—based on Loan No. 308–1320 (original claim no. 353)

No. 393—based on Loan No. 308–1460 (original claim no. 393)

No. 394—based on Loan No. 308–0595 (original claim no. 394)

No. 395—based on Loan No. 307–7237 (original claim no. 395)

No. 396—based on Loan No. 307–9357 (original claim no. 396)

No. 397—based on Loan No. 308–1395 (original claim no. 363)

No. 398—based on Loan No. 308–1528 (original claim no. 359)

No. 399—based on Loan No. 307–9340 (original claim no. 360)

No. 400—based on Loan No. 307–5975 (original claim no. 362)

For supporting documents, a note written on the proofs of claims says "Supplied previously. Voluminous. Can supply again if desired. Please advise." Also, under basis for Claim is written "monies (details available)."

On May 20, 2003, the trustee filed a "Fourth Joint Motion of Trustee and Bank Group to Distribute Property of the Estate." On June 9, 2003, the court received an undated letter from A. Mirza, 9 Pilgrim Drive, Sharon MA 02067, requesting an opportunity at the hearing on the motion to "present facts" regarding claims 353 through 362. The court construed the letter as an objection to the distribution motion.

On June 11, 2003, the court held a hearing on the distribution motion. A. Mirza appeared pro se. The court overruled A. Mirza's objection and granted the motion. However, the court provided A. Mirza with forty-five days to file a motion under § 502(j) for reconsideration of the claims. The court also ordered the trustee not to distribute funds to Mirza pending the motion to reconsider.

On July 28, 2003, N. Mirza filed the "Motion to Reconsider Claims filed by Estate of Mushaf Mirza" requesting that the court (i) grant reconsideration of the claims; (ii) allow the claims in full; and (iii) allow payment of the Escrow Claims in full.

### *The settlement between the trustee and Mirza*

At the September 5, 2003, hearing on the motion for reconsideration, A. Mirza testified that she agreed to the resolution set out by Baum in the February 22, 2002, e-mail. She further testified that she understood that the Mirza estate would actually be paid $117,000. She testified that she felt a payment of $117,000 would be better than litigating the claims. She said that she did not see the court's "Order on Trustee's Third Set of Objections to Claims" until she noticed it attached to a

---

1. At the court's direction, the trustee is holding this distribution until the dispute over the claims has been resolved.

pleading some time after it had been entered.

Baum testified that he had at least one discussion with A. Mirza regarding the settlement of the claims but that he never told her that she would get paid $117,000 on the claims. Baum testified that he could not have given A. Mirza a range of recovery on allowed claims at that time because the administration of the estate was in a state of uncertainty. He admitted that he does not recall sending A. Mirza a copy of the order allowing claim 353 as a general unsecured claim and disallowing the remaining claims.

█ The court did not conduct an evidentiary hearing on the contested claims. Instead, the court entered the February 25, 2002, order allowing claim 353 and disallowing claims 354 through 363 based on the agreement between the trustee and the Mirza estate, as represented by A. Mirza. Nevertheless, an order based on a settlement agreement qualifies as a final judgment on the merits and can be given res judicata effect. *In re West Texas Mktg. Corp.*, 12 F.3d 497, 500–01 (5th Cir. 1994). The February 25, 2002, order, while based on the settlement agreement, allows one claim and disallows the other claims.

### Section 502(j): Reconsideration of a claim for cause

The Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). Bankruptcy Rule 3008 implements § 502(j). The Advisory Committee Notes to Bankruptcy Rule 3008 explain that "the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved." *In re Colley*, 814 F.2d 1008, 1010 (5th Cir.1987).

When determining whether "cause" exists to reconsider a claim, courts generally apply the standards set forth in Federal Rule of Civil Procedure 60(b), incorporated by Bankruptcy Rule 9024. In the Fifth Circuit:

> when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim. The elaboration of Section 502(j)'s requirement of "cause" for reconsideration by the Rule 60 criteria substantially eliminates the "tension with the right of an appeal from an erroneous final order."

*Id.* (quoting 3 Collier on Bankruptcy (15th ed.) ¶ 502.10 at 502–107).

This court has also explained:

> The "for cause" referred to in section 502(j) depends on the particulars of the situation, especially on the time frame in which the Rule 3008 motion is brought. If the Rule 3008 motion is brought within the 10 day time frame referred to in Rules 9023 and 8002(a), Rule 9023 will guide the "for cause" standard.
>
> Alternatively, if the Rule 3008 motion is brought after the expiration of the 10 day period, Rule 9024 (applying Rule 60 of the Federal Rules of Civil Procedure) will guide the "for cause" standard.

*In re Pride Cos., L.P.*, 285 B.R. 366, 369 (Bankr.N.D.Tex.2002).

Because Mirza did not move for reconsideration of the claims within ten days after entry of the February 25, 2002, order allowing claim 353 and disallowing the remaining claims, the court looks to Rule 60 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 9024,

to determine what may constitute "cause" for reconsideration of the claims under § 502(j).

Subsection (a) of Rule 60 of the Federal Rules of Civil Procedure is not applicable in this case because it addresses *clerical* mistakes in judgments, which is not alleged here.

Subsection (b) of Rule 60 is applicable in this case and provides that relief from judgment, order, or proceeding may be had for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

N. Mirza argues that cause exists to reconsider the claims based on mistake and newly discovered evidence.

*Mistake*

■ The Mirza estate alleges that A. Mirza misunderstood the settlement agreement. A. Mirza testified that she thought the bankruptcy estate would actually pay $117,000 to settle the eleven claims. The settlement agreement, instead, allowed a $117,000 claim. The trustee does not expect to make a 100% distribution on allowed claims. Because of A. Mirza's mistake, the Mirza estate requests that the court reconsider the claims.

A. Mirza testified that after she received notice of the trustee's objections to the eleven claims, she interviewed several attorneys before responding to the trustee's objections. She testified that her discussions with the attorneys gave her insight into the probability of recovery on the eleven claims and the expense that would be involved in litigating the claims. She did not retain an attorney and was not represented by counsel at the time she entered into the settlement agreement.

Baum testified that at least two attorneys contacted him on behalf of the Mirza estate to discuss settlement of the objections to the claims. Baum stated that he inquired of these attorneys whether they had been retained by A. Mirza and that, in fact, none of the attorneys had been retained. Baum declined to enter into settlement discussions with those attorneys. Subsequently, A. Mirza contacted Baum to discuss settlement possibilities.

Before Baum sent the February 22, 2002, e-mail to A. Mirza, he spoke with her on the telephone, arriving at an agreement on settling the dispute. Baum told A. Mirza that he would send her an e-mail with the terms of the agreement for A. Mirza to confirm so that he could present the agreement to the court. A. Mirza testified that she read the February 22, 2002, e-mail from Baum which outlined the terms of the settlement agreement.

The e-mail from Baum to A. Mirza includes the following:

> We discussed the problems with the Claims and the corresponding objections. We negotiated a consensual resolution contingent upon my receipt of your confirming the following:
> 1. Proof of Claim # 353 shall be allowed as a general unsecured claim in the amount of $117,000.
> 2. Proof of Claims # 354–363 shall be disallowed.

If this our [sic] agreement, please send me a confirming email to cbaum@qsclpc.com stating, "This is our Agreement." If I receive such email I will present an Order to the Court and request that the Court approve our agreement. Chuck Baum

E-mail from Charles Baum to Ambereen Mirza (February 22, 2002, 14:54:41) (trustee's exhibit 3).

A. Mirza testified that she responded to the e-mail expressing agreement to the terms. However, she testified that she was mistaken as to the terms of the settlement agreement when she agreed to them. She added that her cousin had died in a car wreck sometime around the time she was dealing with the settlement, and, thus, she was emotionally distraught when she replied to Baum's e-mail. She testified that she believed that the terms of the agreement were that the estate would receive $117,000 in full. She testified that she could not recall what words were used that led her to believe that she would receive $117,000.

The court finds that the trustee's counsel did not tell A. Mirza that the claims would be settled for a flat $117,000. The court finds that A. Mirza did not receive anything in writing, electronically or otherwise, that the claims would be settled for payment of $117,000. A. Mirza was told by the trustee's counsel, verified in the e-mail, that the claims would be settled by allowing claim 353 as an unsecured claim of $117,000 and disallowing the remaining ten claims. The trustee did not mislead A. Mirza into believing that the claims would be settled for payment of $117,000. Yet, she testified that she misunderstood the terms of the agreement.

Under Rule 60(b), "[c]onsent judgments have been reopened when they were agreed to because of erroneous factual representations. Similarly, judgments en-

tered as a result of settlements may be reopened when fraud or *mutual mistake* is shown." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2858 (2d ed.1995) (emphasis added).

A. Mirza did not express any misunderstanding of the terms of the settlement to the trustee or to Baum before she voluntarily agreed to it. Neither Baum nor the trustee had any reason to know that A. Mirza may have thought the Mirza estate was going to receive $117,000 at the time of the agreement. A. Mirza did not move for reconsideration of the claims until after the court entered the interim distribution order on May 15, 2003, more than a year after the February 25, 2002, order allowing claim 353 and disallowing the remaining ten claims. Upon receipt of the interim distribution order, A. Mirza would have seen that the interim distribution would be significantly less than $117,000. At that time, A. Mirza likely became dissatisfied with the terms of the agreement and decided to seek relief from the settlement through a motion to reconsider the claims.

■ But relief because of "mistake" under Rule 60(b)(1) is "not available for a party who simply misunderstands the legal consequences of his deliberate acts." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir.1996). " 'Generally speaking, a party who takes deliberate action with negative consequences ... will not be relieved of the consequences [by Rule 60(b)(1)] when it subsequently develops that the choice was unfortunate.' " *Id.* (quoting 7 Moore, *Federal Practice* ¶ 60–22[2], p. 60–182). *See also Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) (reviewing a party's Rule 60(b)(1) motion for relief from a judgment incorporating a settlement agreement and stating that when one " 'makes a deliberate, strategic choice to settle, she cannot be re-

lieved of such a choice merely because her assessment of the consequences was incorrect.'").

█ Furthermore, one party's mistake as to the facts of a settlement agreement does not justify relief from the settlement agreement. "Existing precedent . . . dictates that only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown v. County of Genesee*, 872 F.2d 169, 174 (6th Cir.1989). "'One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a *mutual mistake* under which *both parties acted.*'" *Id.* (quoting *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948) (emphasis added)). "'Unlike a mutual mistake, a unilateral mistake is not sufficient to allow the mistaken party to limit or avoid the effect of an otherwise valid settlement agreement. *Kline v. Florida Airlines, Inc.*, 496 F.2d 919, 920 (5th Cir.1974). . . .'" *Id.* (quoting *Cheyenne–Arapaho Tribes of Indians of Oklahoma v. United States*, 229 Ct.Cl. 434, 671 F.2d 1305, 1311 (1982)). *See also Mid– South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 392 (5th Cir.1984).

█ A. Mirza made a deliberate choice to settle. The fact that she was not represented by counsel at the time she entered into the agreement does not diminish the deliberateness of her choice. From the time A. Mirza received the trustee's objection to the claims, she began considering how to proceed on the claims. A. Mirza took time to interview attorneys regarding the trustee's objections to the claims. She had the opportunity to retain an attorney to counsel her regarding the terms of the trustee's settlement, but she chose instead to agree to the settlement without retaining an attorney. Her testimony regarding

her emotional state at the time she entered into the settlement does not change this finding. A. Mirza spoke with Baum on the phone regarding the terms of the settlement. If she had any concerns, then she had the opportunity to raise them; she did not. There was no indication in the e-mail from Baum that A. Mirza faced a deadline to agree to the settlement. If any deadline was at issue, it was the hearing date on the trustee's objection, which was set for February 25, 2002. A. Mirza had two to three days to consider the e-mail; she chose to agree to the settlement the same day she received the e-mail. The court concludes that A. Mirza did agree to the settlement with deliberateness.

The court finds that the "mistake" asserted by A. Mirza as to the terms of the settlement agreement may be actually an after-thought or regret. However, giving A. Mirza the benefit of the doubt, she had a misunderstanding best characterized as a unilateral mistake. A unilateral mistake is not a sufficient ground to grant A. Mirza relief from the settlement agreement and is not "mistake" as contemplated by Rule 60(b). As such, A. Mirza has failed to show that there was "cause" because of "mistake" to reconsider the claims.

### Newly Discovered Evidence

█ N. Mirza argues that the claims should be reconsidered because of newly discovered evidence. A. Mirza testified that she had received boxes of documents from attorneys who once represented her father. The claims derive from her father's real estate transactions involving mortgages from the debtor. A. Mirza stated that after she agreed to the settlement with the trustee, her father's attorneys sent her another box of documents that they had overlooked. A. Mirza said that after reviewing the documents that were in that box, she felt that the documents provided a basis for claiming great-

er amounts on the proofs of claim than had been represented when the proofs of claim had originally been filed. A. Mirza testified that she did not know that the documents existed when she agreed to the settlement. She had asked for and received documents from the attorneys. However, A. Mirza testified that the particular documents that she claims constitute the newly discovered evidence were not provided to her until January of this year, after she had agreed to the settlement.

■ Subsection (b)(2) to Rule 60 provides that a court may relieve a party from a final judgment, order, or proceeding for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). "A motion under [60(b)(2) ] is an extraordinary motion, and the requirements of the rule must be strictly met." *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992). "The newly discovered evidence must be in existence at the time of trial and not discovered until after trial. In addition, the evidence must not be cumulative, must be material and must be such that a new trial would probably produce a different result." *Id.* at 1102–03. In *Longden,* the court denied the plaintiff's motion for a new trial based on newly discovered evidence because the evidence was in her file before the hearing date, and the plaintiff had not demonstrated that she had exercised due diligence to find the evidence prior to the hearing. *Id.* at 1103.

A. Mirza claims that the evidence that she found in the box of documents was in existence before and at the time she agreed to the settlement. She claims that she used due diligence in obtaining the documents by requesting that her father's attorneys provide her all documents that they had in connection with their representation of her father. A. Mirza claims that, despite her due diligence, the evidence was not discovered until after she had agreed to the settlement. A. Mirza argues that the documents that she discovered would provide evidence that the claims are greater than she thought they were when she agreed to the settlement with the trustee. Although not clearly argued at the hearing on September 5, 2003, A. Mirza indicated that she would not have entered into the settlement agreement with the trustee had she seen the documents or that she would not have settled on the terms included in the settlement agreement. Because of this, A. Mirza asserts that the newly discovered evidence provides cause for reconsidering the claims.

A. Mirza did not describe the contents of the documents. A. Mirza did not explain why she could not have discovered the information elsewhere before the order allowing claim 353 as an unsecured claim and disallowing the other ten claims was entered. There is nothing in A. Mirza's testimony that indicates what efforts she used to obtain information on the claims besides requesting that her father's attorneys provide her with the documents they had in their offices. Furthermore, the evidence does not indicate that the documents provide material information that, had A. Mirza had that documentation before agreeing to the settlement, would have changed the settlement terms.

A. Mirza had a substantial body of information when she filed the claims. She understood the real estate transactions and had a firm grasp of the basis for the claims. At the September 5, 2003, hearing, the court provided her with an opportunity to explain the basis for the claims. A. Mirza is well-educated, with post-graduate training by a financial institution. She is articulate, sophisticated and has had prior experience with filing claims in another

bankruptcy case. In the first set of proofs of claim, she did not include a specific amount for several of the claims, but, instead, inserted "amount to be determined." Thus, she knew the basis of the claims, knew that the amount of some of the claims to be asserted had not been determined by the Mirza estate, and could articulate the claims for the trustee. With this, she chose to settle. She has not demonstrated how the documents she received after the settlement would have changed her negotiating posture.

The Mirza estate has not established that the documents constitute cause as newly discovered evidence to reconsider the claims.

### *"Any other reason" clause: prejudice to the estate vs. prejudice to Mirza*

■ Rule 60(b)(6) provides relief from a final judgment, order, or proceeding for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). N. Mirza argues that the potential prejudice to the estate arising from reconsideration of the claims is outweighed by the potential prejudice to Mirza arising from disallowance of the claims and that such prejudice is a reason for the court to grant the motion to reconsider. Prejudice to the claimant that outweighs prejudice to the rest of the bankruptcy estate may constitute cause under § 502(j). Regret or misunderstanding over a settlement does not constitute prejudice to the claimant. The Mirza estate has an allowed claim and will receive its proportionate share of the bankruptcy estate based on that claim.

### Time Limit

Motions under Rule 60(b) must be made within "a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P.

60(b). "Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into all matters governed by the Bankruptcy Rules *except, inter alia,* 'the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)....' " *Colley,* 814 F.2d at 1010 (quoting Fed. R. Bank. P. 9024).

■ The order allowing claim 353 as a general unsecured claim and disallowing the remaining claims was entered on February 25, 2002. N. Mirza filed the motion to reconsider on July 28, 2003, more than one year after the order was entered. The reasons for cause claimed by N. Mirza that would fall under the one-year limitation are "mistake" and "newly discovered evidence." A settlement agreement resolving litigation is considered to be actually litigated. *Klingman v. Levinson,* 66 B.R. 548, 552 (N.D.Ill.1986). *See also West Texas Mktg.,* 12 F.3d at 500–01 (stating that a settlement "represents a full and final disposition of the merits"). Accordingly, the claims were contested and, under Rule 9024, the one-year limitation should apply. If it did not apply, the court would still consider whether the motion to reconsider was filed within a reasonable time.

■ To determine what constitutes reasonable time, courts consider the facts of each individual case. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2866 (2d ed.1995). "The courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and they consider whether the moving party had some good reason for his failure to take appropriate action sooner." *Id.* In this case, the court finds that N. Mirza had a satisfactory reason for

failing to file the motion sooner than she did; giving A. Mirza the benefit of the doubt, she realized that she misunderstood the effect of the settlement agreement when she received the interim distribution order and the subsequent distribution motion. After receiving those documents, A. Mirza wrote to the court concerning reconsidering the claims and filed supplemental proofs of claim. The trustee has not completed the administration of the bankruptcy estate and has not distributed all the assets of the bankruptcy estate. The court finds that the estate is not prejudiced by the timing of the motion for reconsideration and that the motion for reconsideration would be deemed timely filed if the one-year limitation did not apply.

### Request to allow escrow claims in full

N. Mirza also requests that the court allow payment of her escrow claims in full. The court had established a dedicated fund to pay mortgagor escrow claims. That fund has been exhausted. The bankruptcy estate, therefore, would be prejudiced if the court recognized, on reconsideration, escrow claims by the Mirza estate. In addition, as the court does not find cause under § 502(j) to reconsider the claims, the court's order allowing claim 353 as a general unsecured claim and disallowing the remaining claims stands. This request is denied.

### Request that claims be deemed timely filed and that N. Mirza be given an opportunity to present evidence establishing the claims

In the motion for reconsideration of claims, N. Mirza requests that the court deem the original proofs of claims to be timely filed and provide N. Mirza with the opportunity to present evidence establishing the claims. She asserts excusable neglect on Rule 60(b) to support this request.

The court denies the request because to consider the request would be to reconsider the claims. The court would only address the timeliness of the filing of the proofs of claims if the court granted the motion for reconsideration of the claims.

### Conclusion and Order

The court does not find cause under § 502(j) to reconsider the claims. Accordingly,

**IT IS ORDERED** that the motion for reconsideration of claims filed by the estate of Mushaf Mirza is **DENIED**.